Grucella v. General Motors Corp.

*Harry F. Kaiser* and *Mary Alice Duffy*, for plaintiff.

*Sidney L. Wickenhaver*, for General Motors Corporation.

*John Linwood Owens* and *Robert A. Detweiler*, for General Motors Acceptance Corporation.

*Frank R. Ambler* and *Arthur B. Walsh, Jr.*, for Bryner Chevrolet Co.

OLIVER, P. J., July 2, 1956.— . . . The chancellor makes the following findings of fact:

1. Plaintiff purchased a 1955 model Chevrolet automobile from defendant Bryner Chevrolet Co. on September 19, 1955, for a price of $2,898.70; the purchase was financed on a 30-month payment plan by means of a conditional sales contract, and plaintiff made a down payment of $1,058.70, consisting of $6 cash and $1,052.70 credit on a 1953 Plymouth trade-in.

2. The conditional sales contract was subsequently assigned to defendant GMAC.

3. The Chevrolet automobile was manufactured by defendant General Motors Co.

4. The first monthly payment of $69.65 under the conditional sales contract was due and payable on October 19, 1955.

5. Plaintiff never made any monthly payments under the conditional sales contract.

6. Defendant GMAC repossessed the automobile on November 29, 1955.

7. The automobile was fit for the purposes for which it was sold, and was not defective in any material respect; there was a slight vibration and whine in the car immediately after purchase, but this condition was a minor one which did not impair the maneuverability or drivability of the car, and had no effect on the driver's ability to control it.

8. Plaintiff notified all three defendants of an alleged mechanical defect in the automobile prior to repossession.

9. Defendant Bryner Chevrolet Co. overhauled the automobile at plaintiff's request and installed new parts at no cost to plaintiff.

10. The automobile is in proper running order and fit for the purposes for which it was sold, and this fact has been conceded by plaintiff.

11. The car was left by plaintiff unlocked and unattended on the street for several hours during the night immediately prior to repossession; there was no camera or camera equipment in the car at the time of repossession, and all items found therein were returned to plaintiff.

12. All defendants acted in good faith, without malice or ill will.

13. Defendant GMC gave a manufacturer's warranty running to plaintiff to repair or replace any part of the car which was defective by reason of materials or workmanship.

14. Defendant GMC has properly performed said warranty.

### Discussion

This case is in equity because of an inadequate remedy at law. There are many interwoven problems, which, if the strict legal remedy were pursued, would make an effective disposition of the matter impossible. Plaintiff claims continuing wrongful conduct on the part of defendants, and a multiplicity of suits would be required in the absence of equity. See Bright v. Pittsburgh Musical Society, 379 Pa. 335 (1954). Involved are title to, and the respective rights of various parties in, a new automobile, which was repossessed before any monthly payments were made by plaintiff, and at a time when the depreciation factor weighs

most heavily. In addition, certain personal property of plaintiff, which he claims to have left in the car, has apparently disappeared; plaintiff also asks for punitive damages in order to deter defendants from such action in the future, and not one, but three defendants have been joined, General Motors Corporation, the manufacturer of the car, hereinafter referred to as "GMC"; General Motors Acceptance Corporation, the assignee of the financing agreement, hereinafter referred to as "GMAC", and Bryner Chevrolet Co., the seller and assignor of the contract. Plaintiff also claims that defendant assignor acted as agent of defendant GMC, and that defendant GMAC is a branch of the GMC corporation. Having once assumed jurisdiction, the chancellor will decide all issues raised by the parties: Buswell v. Buswell, 377 Pa. 487 (1954).

There is no dispute that plaintiff, a free-lance photographer who used an automobile in his work, purchased a new 1955 model Chevrolet automobile from defendant Bryner Chevrolet Co. on September 19, 1955, for a price of $2,898.70, and that the purchase was financed on a 30-month payment plan by means of a conditional sales contract. Plaintiff made a down payment of $1,158.70, consisting of $6 in cash and a $1,152.70 credit on a 1953 Plymouth trade-in. The first monthly payment of $69.65 was therefore due and payable one month later, or on October 19, 1955. The conditional sales contract was assigned to defendant GMAC.

Plaintiff testified that the day after he took delivery of the car, he drove it to Washington, D. C., and that, when he traveled at a speed in excess of 30 miles per hour, there was a "vibration" and a "whine" in the rear end, and that he "couldn't control it". He returned to the dealer, Bryner Chevrolet Co., and complained, stating that he wanted another car or his

money back. The dealer refused to do either, but promised to remedy any defects in the car. Then followed conflicting testimony as to what the trouble was, if any, whether it could be remedied, whether the condition was in fact remedied, what plaintiff was told, when he contacted the other defendants and whom he talked to at the various offices. In any event, defendant Bryner Chevrolet Co. admits notice of the alleged defect, defendant GMAC admits receipt of notice of an alleged mechanical defect prior to repossession and defendant GMC admits notice of an alleged mechanical defect from plaintiff's attorney dated October 12, 1955, and received on October 24, 1955. Plaintiff made no monthly payments, and the automobile was repossessed on November 29, 1955, by defendant GMAC. Ten days later plaintiff filed this suit in equity, and the automobile is now in the hands of defendant Bryner Chevrolet Co.

Plaintiff's position is that under Section 2-314 of the Uniform Commercial Code of April 6, 1953, P. L. 3, the automobile was not "fit for the ordinary purposes for which such goods are used". The code provides that such a warranty is made unless excluded in the contract, and no exclusion appeared here. Obviously, argues plaintiff, an automobile which cannot properly be controlled because it vibrates and whines at a speed in excess of 30 miles per hour is not merchantable, and plaintiff was therefore justified, under section 2-608 of the Uniform Commercial Code, in revoking his acceptance, since the alleged defect substantially impaired the value of the car to plaintiff.

Plaintiff further contends that he had a security interest in the car for his down payment, under section 2-711(3) of the Uniform Commercial Code, and that defendant GMAC's repossession was wrongful. Since all defendants knew of the alleged defect, and

since an assignee takes subject to defenses valid against an assignor and cannot escape same even by express agreement of the buyer (Uniform Commercial Code, sec. 9-206(1)), plaintiff claims all defendants acted with a willful and wanton disregard for the rights of others, and asks the return of his down payment, the value of the goods that disappeared and punitive damages in the sum of $3,000.

We cannot agree with the above. The testimony as to the vibrations and whine discloses that it was necessary to listen carefully to detect either one, and the testimony of plaintiff to the effect that he had difficulty in controlling his automobile was not convincing. In addition, plaintiff admits in his brief that the car has been road tested subsequent to the hearing, and is now in proper running condition.

We are inclined to believe defendant Bryner Chevrolet Co.'s testimony to the effect that the alleged defect was a minor one which could be repaired, and in any event would disappear after the break-in period. Plaintiff, therefore, was not justified in revoking his acceptance.

Even assuming, however, that the automobile was unmerchantable, and that plaintiff properly and justifiably revoked his acceptance, and that plaintiff had a security interest in the goods, plaintiff was under a duty, according to section 2-602(2)(a) of the Uniform Commercial Code, not to exercise any rights of ownership over the goods. If he did so, then such use was wrongful, according to the code.

We are convinced that plaintiff did exercise rights of ownership in the car after his alleged revocation of acceptance. It is difficult to reconcile his statement that the goods were unmerchantable, and that he was holding same as "security" with the facts that: (a) Plaintiff admits the car was parked by him on the street at night at the time of repossession, and that he

had driven it on the preceding day; (b) the speedometer reading at repossession was 3,354 miles, and plaintiff had had the car for only two months and 10 days at that time; (c) plaintiff states certain camera-equipment belonging to him was in the car at the time of repossession, again admitting use of the car by him for his work as photographer. The above can lead us to no conclusion other than that plaintiff exercised rights of ownership in the goods after his alleged revocation of acceptance. Indeed, there is no dispute that plaintiff used the car "around town", although he states that he could travel no faster than 30 miles per hour. Even assuming the truth of such a statement, however, a plaintiff in such a situation must move in one direction or the other, but not in both; he cannot "hold" the goods as security, and at the same time use the goods and exercise rights of ownership thereover.

In addition, buyer was under a duty, if really holding the goods as "security", actually to sell the car for the seller's account, since buyer had not, according to his own testimony, received reasonable instructions from seller, and since the goods were of the type that "threaten to decline in value speedily". See Uniform Commercial Code, sec. 2-603(1).

Notwithstanding the above, plaintiff had the right to have the car repaired without cost to him. As a matter of fact, defendant GMC admits responsibility for that under its manufacturer's warranty, and, as pointed out above, the car has admittedly been put in proper running order. Plaintiff makes much of the fact that a written warranty was not received, but all defendants admit the existence of the manufacturer's warranty, whether or not plaintiff actually received the pamphlet customarily inserted in the glove compartment of new automobiles.

We have a situation, therefore, where plaintiff purchased a new car which has, because of lapse of time, greatly depreciated. The automobile was repossessed on November 29, 1955, and this suit was commenced 10 days later, staying all proceedings concerning the car, so that defendant GMAC naturally could not change position and resell the car, but is holding it until disposition of this suit. Notwithstanding the dispute as to whether the alleged revocation of acceptance was wrongful, there is no doubt that the car now operates properly, which fact is consistent with our determination that the defect was, as claimed by defendants, a minor one, easily remedied, which would probably have disappeared in the ordinary course of breaking in, even if it had not been corrected by the Bryner Chevrolet Co.

While plaintiff's revocation of acceptance was improper, he apparently acted in good faith, and it would be an extreme hardship for him to make payment at this time of the entire balance due under the contract upon default. On the other hand, a resale at this time at the lower market would undoubtedly result in a deficiency claim against plaintiff under the terms of the contract, and sections 9-503, 9-504, et seq., of the Uniform Commercial Code. Rather than have plaintiff now pay the full purchase price of the car, as he could well be required to do under the terms of the contract, we think the ends of justice will best be served by having plaintiff pay to defendant GMAC within 20 days from date hereof all payments now in default, without any interest or penalties, and upon such payment being made defendant Bryner Chevrolet Co. shall return the car to plaintiff; plaintiff must then continue his monthly payments according to the terms of the original contract. We shall require, however, that if plaintiff defaults under his contract in the future for a period of 15 days, plaintiff must forthwith deliver the

automobile to defendant GMAC in good condition, reasonable wear and tear excepted, without the necessity on the part of defendant GMAC to institute legal action to repossess the same. In such event defendant GMAC shall also have all rights of repossession and deficiency judgment as set forth in the original contract and the Uniform Commercial Code, and shall properly account to plaintiff in the event of resale.

If plaintiff is unwilling to accept the automobile under the above terms, then defendant Bryner Chevrolet Co. and/or defendant GMAC shall sell the automobile on the market forthwith, and plaintiff shall then, upon notice of any deficiency resulting from the sale, pay over to defendant GMAC the amount of said deficiency within 30 days of receipt of such notice.

There is nothing in the record to show, as plaintiff claims, that defendant Bryner Chevrolet Co. is the agent for defendant GMC. All the evidence is to the contrary, and we hold that defendant Bryner Chevrolet Co. is not such agent but is an independent contractor and an authorized Chevrolet dealer. The same holds true for defendant GMAC. All the evidence negates the existence of GMAC as an agent of defendant GMC.

As to the camera equipment plaintiff claimed to have left in the car, there is conflicting testimony. The chancellor believes the testimony that the car was left unlocked on the street for two hours or more before the actual repossession. Whether or not the camera and equipment were in the car at the time plaintiff parked it at the curb around midnight, we are convinced that the college student employed by defendant GMAC, who actually repossessed the car, testified truthfully that the car was not locked at that time, and that no camera was found therein. The car was on the street unlocked and unattended from shortly after midnight until "towards the early morning",

and there is nothing to show that the camera equipment, if actually left in the car by plaintiff, was not taken therefrom prior to the repossession. We certainly cannot exclude the possibility of someone unconnected with defendants taking the equipment during that period. Assuming the car to have been unlocked at the time of repossession, any finding that the camera was in the car at that time would be a plain guess on the chancellor's part, with no evidence in the record to support such finding. We therefore conclude that none of the defendants is liable to plaintiff for the value of the camera and equipment.

We shall also deny plaintiff's request for punitive damages, since such damages follow only where ordinary damages have been imposed, and plaintiff is not entitled to any damages here. In addition, the testimony discloses that all defendants acted in good faith, and that whatever happened was not committed willfully, maliciously or negligently, so as to indicate a wanton disregard for the rights of others.

### Conclusions of Law

The chancellor draws the following conclusions of law:

1. Defendant Bryner Chevrolet Co. is not an agent of defendant GMC, but is an independent authorized dealer of GMC.

2. Defendant GMAC is not an agent or branch of defendant GMC, but is a subsidiary corporation, and a completely separate entity.

3. Plaintiff accepted delivery of the car involved in these proceedings.

4. Plaintiff was not justified in revoking his acceptance.

5. Plaintiff had no security interest in the car.

6. Plaintiff is indebted to defendant GMAC for the balance due under the contract.

7. None of the defendants is liable to plaintiff for the camera and/or camera equipment alleged by plaintiff to have been in the car at the time of repossession.

8. Plaintiff is not entitled to damages or punitive damages from any of defendants.

9. The evidence does not support the averments of plaintiff's complaint against any of defendants.

10. The court finds for all defendants and against plaintiff on all counts of the complaint.

### Decree Nisi

And now, July 2, 1956, this cause having been heard on bill, answer and proofs, it is ordered, adjudged and decreed that:

1. The bill in equity is dismissed as to all defendants.

2. Plaintiff is ordered and directed to pay to defendant General Motors Acceptance Corporation within 20 days from date hereof all payments now in default under plaintiff's contract, without interest or penalties, and, upon such payment being made, Bryner Chevrolet Co. shall concurrently return the automobile to plaintiff and plaintiff shall thereafter continue his monthly payments according to the terms of his original contract.

3. If plaintiff thereafter defaults under his said contract for a period of 15 days, he is hereby ordered and directed forthwith to deliver said automobile to defendant General Motors Acceptance Corporation in good condition, reasonable wear and tear alone excepted, without the necessity on the part of defendant General Motors Acceptance Corporation to institute legal action to repossess the same. In such event said defendant shall also have all rights of repossession and deficiency judgment as set forth in the original contract and the Uniform Commercial Code, and shall properly account to plaintiff in event of a resale.

4. If plaintiff is unwilling to accept said automobile under the above terms, then defendant Bryner Chevrolet Co. and/or defendant GMAC, is hereby empowered forthwith to sell said automobile on the market and plaintiff is hereby ordered and directed upon notice of any deficiency resulting from such sale, to pay over to defendant GMAC the amount of said deficiency within 30 days after receipt of such notice.

5. The costs of these proceedings shall be borne by plaintiff.

The prothonotary is directed to enter this decree nisi, and to give notice thereof to the parties or their counsel of record, and unless exceptions are filed within 20 days thereafter, the decree nisi shall become the final decree, as of course.