CHAMPION FORD SALES, INC. ᴇᴛ ᴀʟ. *v.* ROBERT J.
LEVINE ᴇᴛ ᴜx.

[No. 1407, September Term, 1980.]

*Decided September 3, 1981.*

The cause was argued before MORTON, THOMPSON and WEANT, JJ.

*Dorothy A. Beatty,* with whom was *Donald E. Sharpe* on the brief, for appellants.

*Steven J. Fox,* with whom were *Andrea Nager Chasen* and *Talkin & Abramson* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

This case involves an appeal and a cross-appeal from a judgment entered in favor of Mr. and Mrs. Robert J. Levine, appellees and cross-appellants, (buyers) against Champion Ford Sales, Inc. and Ford Motor Company, appellants and cross-appellees (sellers) in the Circuit Court for Baltimore County. The principal issues presented in the sellers' appeal are: (1) whether under the circumstances described below, the buyers justifiably revoked their acceptance, under Md. Com. Law Code Ann. § 2-608, of an automobile which had been purchased from Champion and manufactured by Ford; and (2) if revocation was justified, whether the damages

awarded the buyers were proper. The only significant question presented in the buyers' cross-appeal is whether the trial judge erred in ruling that the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.,* was not applicable in the instant case and that the buyers were therefore not entitled to recover attorneys' fees under its provisions. For the reasons set forth below, we shall hold that the buyers' revocation of acceptance was justified, that the judgment entered included damages which were improperly awarded, and that the trial judge erred in holding that the federal statute had no applicability.

On December 20, 1977, the buyers took delivery from Champion of a new 1978 Ford Granada. They had selected the Granada, which they intended to use for normal family transportation purposes, after considerable comparison shopping. With the car came a limited warranty [1] under which the manufacturer promised that "the Selling Dealer will repair, replace, or adjust free any parts, except tires, found to be defective in factory materials or workmanship within the earlier of twelve months or 12,000 miles." The buyers paid the purchase price of $5,446.35 in cash. Six days after delivery, when the car had been driven 109 miles, the engine became inoperable. After the car was towed to the dealer's service facility, an inspection revealed that a defective engine valve had broken and had fallen into a cylinder, destroying or damaging the engine block, the cylinder head, two pistons, a connecting rod, rings, and a number of gaskets. The defect had existed when the car was sold but could not have been discovered by any reasonable inspection. After the cause and extent of the damage was ascertained, the dealer informed the buyers that it would repair the engine and provided them with a "loaner" car. The buyers accepted the loaner vehicle, but after viewing their car while it was dismantled in the dealer's shop indicated that they did not want the engine repaired but rather desired replacement of either the engine or the car. It was

---

1. The sellers have not argued that the express warranty in any way limited the remedies available to the buyers. *See* Md. Com. Law Code Ann. § 2-719 (1) (a).

their view that a vehicle with a shop-rebuilt engine was not comparable to one with a factory assembled engine. Both the buyers and the dealer's mechanic testified that certain equipment which Ford used in assembling engines in the factory and which it advertised as contributing to the quality of its engines was not available in the dealer's shop. A series of meetings with representatives of the dealer and the manufacturer followed, at which the buyers' requests for a new engine or car were refused. Following these refusals, on January 13, 1978 the buyers advised the dealer that they were revoking their acceptance of the car and demanded the return of the money they had paid. The dealer refused to refund the purchase price and proceeded to repair the car's engine. The repairs were performed by qualified mechanics at the dealer's service facility, at a cost of $889.69. The repairs were completed on February 10, 1978, at which time the car was test-driven by Champion personnel and found to operate satisfactorily. The buyers were then informed that their car was ready to be picked up. The buyers again advised the dealer that they had revoked their acceptance and declined to either inspect or accept the repaired car. On February 13, the buyers returned the loaner vehicle provided by the dealer. On April 10, 1978, when their money had not been refunded, they filed suit. In August 1978, the buyers purchased a replacement for the Granada, a used 1974 Ford Pinto, for which they paid $1,200.00.

On July 10, 1980, the buyers' action came to trial. Their amended declaration was in four counts: Count I sought return of the purchase price paid for the Granada, on the grounds that the buyers had revoked their acceptance; Count II set forth a claim for breach of the implied warranty or merchantability; Count III claimed violation of the Magnuson-Moss Act and breach of express warranties; and Count IV alleged wrongful breach of a guaranty in violation of Md. Com. Law Code Ann. § 14-401(k).[2] In each count, the

---

2. Section 14-401(k) is part of the Maryland Consumer Products Guaranty Act, Md. Com. Law Code Ann. § 14-401 et seq. (1975, 1980 Cum. Supp.). The Act contains provisions similar to those found in the Magnuson-Moss Act.

buyers sought interest, costs, and attorneys' fees. At the close of the buyers' case, the trial judge directed a verdict for the sellers as to Counts III and IV. Counts I and II were submitted to the jury, which returned a verdict in favor of the buyers on each. The jury awarded damages in the amount of the purchase price of the Granada plus interest from the date acceptance was revoked; it also awarded an additional $1200, representing the purchase price of the used Pinto bought to replace the Granada. The judge held that the Magnuson-Moss Act was not applicable and refused to award the buyers attorneys' fees. Appeals to this Court followed.

Md. Com. Law Code Ann. § 2-608 sets forth the circumstances under which a buyer may revoke his acceptance:[3]

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which

---

3. Section 2-606(1) defines "acceptance":

"(1) Acceptance of goods occurs when the buyer
(a) After a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or
(b) Fails to make an effective rejection (subsection (1) of § 2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
(c) Does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him."

is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

*See Lynx, Inc. v. Ordnance Products,* 273 Md. 1, 14-17, 327 A.2d 502 (1974). At trial in the instant case, it was undisputed that the buyers accepted the car without knowledge of its defect, as the result of the practical impossibility of discovering the defect; that they revoked their acceptance within a reasonable time after discovery of the defect and before any substantial change in its condition, not the result of its own defect; and, that they gave adequate notice, within a reasonable time, to sellers: the only issue was whether, at the time they revoked acceptance, there existed a nonconformity which substantially impaired the value of the car to the buyers.

On this appeal, the sellers argue that the evidence was insufficient to permit the jury to find that such a nonconformity existed and that the buyers' revocation was justified. They contend that, although there was obviously a defect in the Granada when it was delivered, they had a right under § 2-608 to cure that defect and that the only competent evidence adduced showed that they did cure the defect; that the nonconformity which existed was eliminated by the repairs which were carried out and that the repaired vehicle "was like new." They further contend that, even if a nonconformity existed after the car was repaired, the evidence was insufficient to permit the jury to find that it substantially impaired the value of the car.

Under the Uniform Commercial Code, a seller is not expressly granted the right to cure when a buyer revokes acceptance, *cf.,* § 2-508 (conferring the right to cure where a buyer rejects goods as nonconforming), although it may be inferred that such a right exists where the buyer accepts nonconforming goods with the expectation that the nonconformity will be remedied. *See* § 2-608 (1) (a). Whether a general right to cure, applicable where a buyer

accepts without knowledge of a nonconformity and thus without the expectation that it will be cured, is also to be inferred, has been the subject of considerable dispute and the decisions are in conflict. *See e.g., Conte v. Dwan Lincoln-Mercury, Inc.,* 374 A.2d 144, 149 (Conn. 1976) (a seller has a right to cure, citing § 2-508 as authority); *Werner v. Montana,* 378 A.2d 1130, 1136 (N.H. 1977) (no right to cure in revocation of acceptance situation).[4] We find it unnecessary to decide the issue. Even if we were to recognize that a seller has a right to cure where the buyer revokes acceptance, in order to be effective to bar revocation in a particular case, the seller plainly would be required to make a full and complete cure. *See Asciolla v. Manter Oldsmobile-Pontiac, Inc.,* 370 A.2d 270, 274 (N.H. 1977); *Moulden & Sons, Inc. v. Osaka Landscaping,* 584 P.2d 968, 970 (Wash. App. 1978). In the instant case, the jury was instructed to determine whether the Granada, as repaired, contained a nonconformity which substantially impaired its value to the buyers; the jury in effect found that it did. Thus, the jury made an inferential finding that the sellers' repairs did not result in a fully conforming tender and did not constitute a cure. The only real issue is whether the evidence was sufficient to support that finding.

A nonconformity exists when the goods are not in accordance with the obligations under the contract. *See* Md. Com. Law Code Ann. § 2-106 (2). The substantiality requirement bars revocation for defects which are trivial or easily corrected, *Rozmus v. Thompson's Lincoln-Mercury Co.,* 224 A.2d 782, 784 (Pa. Super. 1966), or for those which merely make the tender somewhat less than perfect, *Rutland Music Service v. Ford Motor Co.,* 422 A.2d 248, 249 (Vt.

---

4. In the only Maryland decision to date which discusses § 2-608, Lynx, Inc. v. Ordnance Products, 273 Md. at 15, the Court stated, in dicta, that "the buyer cannot revoke his acceptance . . . if following acceptance the seller in fact seasonably cured the nonconformity"; however it is unclear from the statement whether the cure, to be seasonable, must occur prior to the buyer's revocation. J. White and R. Summers, Uniform Commercial Code §8-1 (2d. ed. 1980), states: "The right to cure does not, however, limit revocation of acceptance"; the accompanying footnote reads in pertinent part: "Once a buyer has rightfully revoked acceptance many courts hold that the seller has no right to cure under 2-508."

1980). Whether a nonconformity substantially impairs the product's value to the buyer necessarily involves consideration of subjective factors, i. e., the particular needs and circumstances of the individual buyer, yet proof of substantial impairment requires more than the buyer's subjective assertion that the value of the product to him was impaired; it requires evidence from which the trier of fact, applying objective standards, can infer that the needs of the buyer were not met because of the nonconformity. It is clear that the question of whether there exists a nonconformity which substantially impairs the value to the buyer is one of fact, to be decided by the jury on the facts and circumstances of each individual case. *See Tiger Motor Co. v. McMurtry,* 224 So. 2d 638, 645-46 (Ala. 1969); *Conte v. Dwan Lincoln-Mercury, Inc.,* 374 A.2d 144 at 148; *Welch v. Fitzgerald-Hicks Dodge, Inc.,* 430 A.2d 144, 148 (N.H. 1981); *Asciolla v. Manter Oldsmobile-Pontiac, Inc.,* 370 A.2d at 273; *Jorgensen v. Pressnal,* 545 P.2d 1382, 1384-85 (Or. 1976).

In determining whether the evidence was sufficient to sustain the finding of the jury in the case at bar, we are aided by the decisions of several other courts which have dealt with similar situations. Particularly instructive is the decision of the New Hampshire Supreme Court in *Asciolla v. Manter Oldsmobile-Pontiac, Inc., supra.* There, a new car purchased by the buyer became inoperable less than one month after delivery. An inspection revealed pieces of ice in the transmission, as well as other evidence that the car had been flooded or submerged prior to sale. The buyer demanded that the car be replaced. The seller denied that the car had ever been submerged and offered to repair or replace the transmission. The buyer refused the offer and sought to revoke his acceptance. A master held that the buyer had no right to revoke his acceptance, finding that there was no satisfactory evidence that the car had been flooded and that the repairs offered by the seller " 'would in normal circumstances and to a reasonable person adequately serve to correct the defect' in the transmission." 370 A.2d at 272. The New Hampshire Supreme Court reversed, stating:

"In determining that the plaintiff was not entitled to revoke his acceptance, the master ... utilized, an objective standard, finding that a 'reasonable person' would have been satisfied with the repaired car. Without addressing the validity of that conclusion, we find from the record that the value of the subject automobile to *Mr. Asciolla* was substantially impaired. In purchasing a new car the plaintiff was making a major investment. Few items which are considered necessities occupy such a significant portion of an individual consumer's income as does a new automobile. Few purchases are made with more care and deliberation. The record indicates that the plaintiff was a particularly prudent and painstaking car buyer .... Within three weeks of the purchase of the car at issue in this case he found it to be totally inoperable. He was informed by franchised representatives of the manufacturer that the car had been flooded or submerged. While the master found that the evidence presented at the hearing did not support such a conclusion, no satisfactory reason was ever presented to the plaintiff to otherwise explain the presence of ice in his transmission. Nor was Mr. Asciolla offered any guarantees concerning other deficiencies, caused by the same mysterious condition, which he very reasonably apprehended might arise in the future.

"Under these facts, we think it clear that the plaintiff's confidence in the reliability and integrity of his new automobile was severely undermined. He had bargained for a new car, expecting to receive a vehicle upon whose dependability and safety he could comfortably rely. Instead he received a product which he understandably feared was what is known in popular parlance as 'a lemon.' The plaintiff is correct in this assertion that a new automobile is more than the sum of its various components. It is the integrity of the vehicle as a whole which is

the essence of the consumer's bargain. As the Superior Court of New Jersey said in a markedly similar case concerning a new car with a defective transmission, '[the buyer] assumed what every new car buyer has a right to assume and, indeed, has been led to assume by the high powered advertising techniques of the auto industry — that his new car, with the exception of very minor adjustments, would be mechanically new and factory-furnished, operate perfectly, and be free of substantial defects.' *Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J. Super. 441, 452, 240 A.2d 195, 201-02 (1968). The plaintiff's situation cannot be accurately compared to cases cited by the defendants such as *Rozmus v. Thompson's Lincoln-Mercury Co.,* 209 Pa. Super. 120, 224 A.2d 782 (1966) and *Grucella v. General Motors Corporation,* 10 Pa. D. & C. 2d 65 (1956), in which the cars presented defects which were trivial and readily repaired. The new car in the instant case was rendered wholly inoperable by a defective condition which permeated one of its most essential systems. Under such circumstances, his revocation of acceptance is justified. . . .

"The defendants contend that they are entitled to cure the nonconformity in the tendered goods. * * * For the reasons set forth above, any cure other than replacement of the autmobile with a new one would, under the facts of this case, be insufficient to accomplish a conforming tender." *Id.* at 273-74.

In the New Jersey case referred to by the *Asciolla* court, *Zabriskie Chevrolet, Inc. v. Smith, supra,* in which the buyers' new car became inoperable, due to a transmission defect, as it was being driven home from the seller's showroom, the court upheld the buyer's right to reject the car, notwithstanding that the seller immediately replaced the transmission with one from another vehicle in its showroom, stating:

"The 'cure' intended under the cited section of the Code [§ 2-508] does not, in the court's opinion, con-

template the tender of a new vehicle with a substituted transmission, not from the factory and of unknown lineage from another vehicle in plaintiff's possession. It was not the intention of the Legislature that the right to 'cure' is a limitless one to be controlled only by the will of the seller. A 'cure' which endeavors by substitution to tender a chattel not within the agreement or contemplation of the parties is invalid.

"For a majority of people the purchase of a new car is a major investment, rationalized by the peace of mind that flows from its dependability and safety. Once their faith is shaken, the vehicle loses not only its real value in their eyes, but becomes an instrument whose integrity is substantially impaired and whose operation is fraught with apprehension. The attempted cure in the present case was ineffective." 240 A.2d at 205.

In *Welch v. Fitzgerald-Hicks Dodge, Inc., supra,* in which a car buyer revoked acceptance because of a persistent "shimmy" in the car's front end, the court rejected the sellers' argument that the evidence was insufficient to permit the jury to find that the defects substantially impaired its value. The court held that the buyers' testimony that the persistent problem had undermined their confidence in the vehicle and destroyed its value to them as a family car could not be ignored; the court also held that the jury would have been free to conclude that other defects, even though they had been repaired by the seller, had destroyed the buyers' confidence in the integrity of the car and justified revocation. *See also, Conte v. Dwan Lincoln-Mercury, Inc., supra; Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349 (Minn. 1977); *Werner v. Montana, supra.*

A different result was reached by the Court in *Pratt v. Winnebago Industries, Inc.,* 463 F. Supp. 709 (W.D. Pa. 1979). There the buyer of a new, $16,000 mobile home discovered a number of defects, including a defect in the

transmission which made the home inoperable, shortly after delivery. The seller undertook repairs. While the transmission was being repaired, the buyer demanded that the vehicle either be replaced or that the purchase price be returned. The seller refused and the buyer declined to permit the seller to repair the other defects. On buyer's suit for revocation, the Court, following a non-jury trial, found that the vehicle's nonconformities did not substantially impair the value. It based its decision upon the seller's willingness to fully remedy the defects, all of which were easily correctable. *Id.* at 715.

Turning to the case before us, we are of the opinion that the evidence amply supported the jury's finding that the repaired Granada contained nonconformities which substantially impaired its value to these buyers and we therefore hold that the sellers failed to make a complete cure. The buyers purchased a new car with a new, factory-built and installed engine. They indicated that they chose that particular model, after careful comparison, because it was one in which they felt they could have confidence. What the sellers tendered was a repaired car with a shop-rebuilt engine. The members of the jury evidently perceived a difference between the two and they were completely justified in so doing; the goods tendered clearly did not conform to the contract. Nor was the evidence of substantial impairment any less compelling; the defect here was plainly neither trivial nor easily corrected, as the repairs required nearly four weeks and the replacement of a sizable number of engine components, at a cost of nearly $900. The buyers testified that because the car had undergone major repairs its value to them was substantially impaired. Certainly any consumer would consider the car the buyers contracted for to be considerably more valuable than that which they received, both monetarily and in terms of degree of confidence with which it could be operated.

The sellers also contend that the instructions to the jury concerning the buyers' revocation of acceptance were improper, in that they allowed the jury to apply a subjective

standard and to consider incompetent evidence. The jury was instructed as follows:

"On the first issue the Plaintiffs have claimed a right to revoke their acceptance of the 1978 Ford Granada, which, of course, is the subject of this case. In order to prove such a right, the Plaintiffs must prove four things, and I will instruct you in a moment what these four items are, but I will tell you that in this case they have proved three of them and there is really one that remains, but for clarification I will give you all of the elements to prove a right to revoke acceptance, but first the Plaintiff has the burden of proving by a preponderance of the evidence that there existed in the vehicle a nonconformity or what I for simplification refer to as a deformity. 2. That any such nonconformity or defect substantially impairs the value of the vehicle to the Plaintiffs. 3. That revocation was made within a reasonable time after discovery of the defect and before any substantial change in the condition of the vehicle. and 4. that the Plaintiffs gave notice to the Defendants.

"Now, I instruct you that as a matter of law you need only concern yourself with the second item, and that is whether or not there was such a defect that substantially impaired the value of the automobile to the Plaintiffs.

"In addition, whether the defect was sufficient to give rise to a substantial impairment of the value of the vehicle. You must consider whether the defect would cause such a substantial impairment to the average buyer.

"In making this determination you may also consider the particular needs, circumstances and expectations of Mr. & Mrs. Levine, the Plaintiffs.

"The Defendants in the case offered to repair the automobile engine. The Plaintiffs have testified that that repair would not be sufficient, but that the

repaired engine would still be such a nonconformity or defect that it would still substantially impair the value of the vehicle to them. The Plaintiffs ask that the engine be replaced or that the automobile be replaced. Therefore, you must weigh all of the evidence to determine if the repaired engine would substantially impair the automobile's value, or if the Defendant would be permitted to replace the engine — excuse me. I want to change that. I am sorry. Let me just repeat that one second. Therefore, you the Jury must weigh all of the evidence to determine if the repaired engine would substantially impair the automobile's value or if the Defendant would be required to replace the engine or indeed the entire automobile.

"If after considering all of the evidence you are conviced by preponderance of the evidence that the defective engine in the automobile purchased by Mr. and Mrs. Levine substantially impaired the automobile's value to them, then you must find they properly revoked acceptance of the automobile."

The sellers requested that the jury be instructed that they were to determine whether any nonconformity found would substantially impair the value of the vehicle to an "average" buyer. The trial court properly declined to give the requested instruction. Section 2-608 (1) clearly indicates that whether revocation of acceptance is justified is to be determined by judging the impairment of value to the particular buyer involved, not an average buyer. *See Tiger Motor Co. v. McMurtry,* 224 So. 2d at 646; *Jorgensen v. Pressnall,* 545 P.2d at 1384.

The sellers object to the trial court's failure to instruct the jury that the sellers had a right to cure. The argument is without merit. Our review of the instructions given discloses that the judge consistently instructed the jury that they were to determine whether the engine, as repaired, impaired the value of the car. By so instructing the jury, the court presupposed a right to cure and the instructions were, if

anything, more favorable to the sellers than they might have been.

The sellers also argue that the judge's instructions improperly suggested to the jury that they could consider as evidence of nonconformity the buyers' subjective statements. The instructions made no reference whatsoever to the buyers' testimony; furthermore, as we have indicated above, the buyers' testimony, along with the other evidence adduced at trial, was sufficient to show a nonconformity which substantially impaired the car's value. We reject the argument.

The sellers' next contention is that the trial court erred in failing to direct a verdict in their favor on Count II of the buyers' declaration, which alleged breach of implied warranties, and in instructing the jury as a matter of law that the damages it was to assign for any breach of warranty found was the price of the car. As we affirm the judgment for the purchase price of the car on the grounds that the buyers justifiably revoked acceptance, we need not address this contention.

The sellers' final contention is that the trial judge erred in permitting the jury to award as damages the purchase price of the used Pinto bought to replace the Granada. We agree.

The buyers assert that the price of the Pinto was properly recoverable, under § 2-714 (3), as consequential damages resulting from the sellers' breach of warranty.[5] Clearly it was not. The buyers were not damaged by their purchase of the Pinto; rather, they paid $1200 for a car worth $1200, thus converting assets from one form to another. That they would not have purchased the Pinto had the Granada been satisfactory is immaterial; had the Granada been satisfactory, they would not have been permitted to recover the purchase price. To allow the buyers to recover the purchase price of another car is to permit a double recovery and to place the buyers in a better position than that which they

---

5. Consequential damages may also be recovered where the buyer revokes acceptance. Md. Com. Law Code Ann. § 2-711(1); § 2-712(2).

would have occupied had there been no breach. That portion of the award which represents the costs of the Pinto must therefore be reversed.

On their cross-appeal, the buyers contend that the trial judge erred in ruling that the Magnuson-Moss Warranty Act, 15 U. S. C. § 2301 *et seq.* had no applicability and that they were not entitled to recover attorneys' fees incurred in prosecuting their action against the sellers. We agree.

Section 2310(d) of the Act provides:

> "(1) Subject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief —
>
> "(A) in any court of competent jurisdiction in any State . . .
>
> "(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate."

Section 2310 (e) provides:

> "No action . . . may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty . . . unless the person obligated under the warranty . . . is afforded a reasonable opportunity to cure such failure to comply."

The Act thus permits recovery of attorneys' fees by a consumer who prevails in an action against the seller for breach of an implied warranty under state law provided the seller is afforded an opportunity to cure. In the instant case, the buyers prevailed in their action against the sellers for revocation of acceptance, which was based upon a nonconformity which breached the implied warranty of merchantability. As we have indicated above, the buyers, prior to instituting their action, afforded the sellers an opportunity to satisfactorily cure the nonconformity, i.e., to replace the engine or the car. They therefore satisfied the requirements of the Act and were entitled to recover attorneys' fees, unless determined by the court to be inappropriate. *See Welch v. Fitzgerald-Hicks Dodge, Inc.,* 430 A.2d at 149; *Ventura v. Ford Motor Corp.,* 414 A.2d 611, 613 (N.J. Super. 1980). We shall remand the case to the trial court for determination as to the amount of the buyers' attorneys' fees and for an award thereof, unless the court below, in its discretion, determines that such an award is inappropriate.

> *Judgment affirmed in part and reversed in part.*
> *Case remanded to the Circuit Court for Baltimore County for further proceedings consistent with this opinion.*
> *Costs to be paid by the appellants.*