CRAWLEY, Judge.
On July 21, 2000, Bruce Posten and Donna Posten sued Forest River, Inc., the manufacturer of a new “Georgetown” model recreational vehicle (“RV”) the Postens had purchased in December 1999 for $78,715.84. The Postens sought damages for breach of express and implied warranties under the Alabama Uniform Commercial Code, Ala.Code 1975, § 7-2-101 et seq., and damages under the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (the “Magnuson-Moss Act”), 15 U.S.C. § 2301 et seq., alleg *959 edly arising from the sale of the RV; the Postens also sought an award of attorney fees and costs pursuant to 15 U.S.C. § 2310(d). Forest River filed a motion for a summary judgment, which the trial court granted as to the Postens’ implied-warranty, bad-faith, and Magnuson-Moss Act claims. A trial was then scheduled on the Postens’ claim for breach of an express warranty and their request for damages for mental anguish. In its order granting the partial summary judgment, the trial court found that no evidence had been presented indicating that Forest River had refused to conduct warranty repairs, but the trial court permitted the case to proceed to trial on the issue whether those repairs were conducted within a reasonable time. Following an ore tenus proceeding, the trial court entered a judgment in favor of the Postens on their breach-of-express-warranty claim and awarded them $36,550 for property damage and $2,000 for mental anguish.
Forest River appeals, contending that the trial court erred in calculating the Postens’ damages and in awarding damages for mental anguish. The Postens cross-appeal, contending that the trial court erred in refusing to award an attorney fee under the Magnuson-Moss Act.
The record reflects that shortly after the Postens purchased the RV, they began experiencing problems with it: water leaked into the cab from both the driver’s-side and passenger’s-side windows; the “slide-out room” also leaked. According to testimony in the record, those water leaks caused damage to the floor and produced a “sour” smell. In addition, air blew into the RVs cab from under the dashboard on the driver’s side, and the RVs “leveling jacks” engaged while the RV was in motion, sounding alarms and requiring the Postens to make stops to reset the leveling jacks.
On December 13, 1999, Mr. Posten took the RV back to the dealer, Summer Breeze RV Center, from whom the Postens had purchased the RV to repair the problems. After approximately one week, the dealer advised Mr. Posten that the repairs were complete. However, despite the dealer’s attempt to repair the RV, the RV still had leaked. Mr. Posten returned to the dealer and left the RV for additional repairs, which required six weeks to complete. Mr. Posten picked up the RV in late February 2000, after the dealer had installed new windows in the RV. After the second repair attempt, the Postens continued to experience water leaks and leveling-jack problems; every time it rained, water would leak into the RV. Mr. Posten took the RV back to the dealer for a third time and spoke with the service manager, Anthony Leonard, who told Mr. Posten the RV could not be repaired. It was Leonard’s opinion that the windows were poorly designed and that the Postens’ slide-out room was defective.
On March 23, 2000, after the three unsuccessful attempts to remedy the RVs problems, the Postens’ attorney sent a certified letter to Forest River detailing the problems the Postens had experienced with the RV The letter specifically advised Forest River that, if the matter could be resolved, it would not be necessary for the Postens to pursue any legal claims. Forest River admitted that it did receive the letter, but that the letter was lost and was never placed in Forest River’s “unit file.”
During the hearing on Forest River’s motion to alter, amend, or vacate the judgment, the trial court explained how it had arrived at the damages award:
“[Fjirst I determined that [the RV] was not reparable completely because of [expert] testimony that [the expert] could not guarantee that the windows or the leaks could ever be fixed. Therefore, I *960 concluded that [Forest River] was not able to put it back in its original condition, and, therefore, the damages would be determined on a before and after value basis.
“I determined based upon ... testimony that the fair-market value before the accident was $75,000.... [T]he value after [repairs] was $40,000. In its repaired condition [there] was left a difference of $85,000. I added to that the cost of repair $1,550 and came out with a figure of $36,550 and I concluded that $2,000 would be appropriate for the mental anguish and that’s how I came up with $38,550.”
On appeal, Forest River contends that the trial court’s calculation of the property damage was erroneous and that the award was excessive. Specifically, Forest River asserts that the proper measure of damages is the cost of repair, which it asserts is between $914 and $1,550.
The evidence adduced at trial indicated that the Postens’ RV could not be made free of defects. Glenn Langston, a service manager in RV repair and sales who was retained by Forest River to inspect the Postens’ RV, testified that the windows on the Georgetown Model were “notorious for leaking” and that he would not guarantee that any new windows that were installed would not leak. Langston testified that during his examination of the RV, he had taken the windows out and reinstalled them, but when questioned whether he repaired the leaks, he stated: “No, sir, we could not because that’s a defect in the window itself not in the installation process.” Langston further testified that the leaking problem stems from the window assembly, not the installation.
There was also testimony that the Pos-tens’ RV had been seriously devalued. John Vardaman, an RV salesperson, testified that he would accept the Postens’ RV at “well below wholesale market value.” He explained: “I would not want to end up in a situation like this with one of our retail customers with something that we don’t feel like we can repair. I would take it to an auction.” Ron Dudley, an independent adjuster and investigator, testified that he had inspected the RV and had taken it to three dealers to obtain their opinions as to the market value of the RV. Not one of the dealers that Dudley met with would accept the Postens’ RV as a “trade-in” toward the purchase of another RV, and none of those dealers indicated a willingness to purchase the Postens’ RV. Dudley testified that, in his opinion, the Postens’ RV, in an undamaged condition, was worth $75,000; with the defects, he valued the Postens’ RV at between $25,000 and $30,000.
Forest River argues that under the terms of the warranty the Postens were entitled only to the cost of repair as a measure of damages. Forest River’s limited warranty states, in part:
“[Forest River’s] OBLIGATIONS: [Forest River] will remedy substantial defects in materials and workmanship caused by [Forest River]. [Forest River] shall elect to remedy the defect from among the following: repair, replacement or refund.”
Here, evidence was presented that the cost of repairs with parts of like kind and quality would not restore the RV to its fair market value free from defects. Therefore, the trial court could logically conclude that the limited warranty had failed of its essential purpose so as to warrant an award of damages as allowed by the Uniform Commercial Code, Title 7, Code of Alabama 1975 (hereinafter the “UCC”). See Liberty Homes, Inc. v. Epperson, 581 So.2d 449 (Ala.1991). Section 7-2-714(1), Ala.Code 1975, states:
*961 “(1) Where the buyer has accepted goods and given notification ... he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller’s breach as determined in any manner which is reasonable.”
The trial court’s award of damages has a sound basis, given the expert testimony. The court could reasonably have concluded from the evidence that the window leaks were not repairable. We conclude that the trial court’s award of damages was proper in this case.
Forest River also contends that the trial court erred in awarding damages for mental anguish. Specifically, it argues that the evidence does not support an award of mental-anguish damages to the Postens. We disagree. Donna Posten testified concerning the fear she experienced when the leveling jacks engaged while her husband was driving the RV. When the leveling jacks engaged, an alarm that was “almost deafening” sounded. She also testified that the RV had been a profound disappointment:
“It is very upsetting because this is a second home for me. We paid almost as much for this motor home as we did our own home that we live in....
“And, you know, the first thing I do when I get to any home, ... I would take my shoes off and relax. But every time I take my shoes off, I would get my feet wet.... [M]y 12-year old daughter can’t even lay [on] the floor. If you’re not sitting on the furniture, nine times out of ten you might get wet.”
She also testified that there was now a “hump” and a “sink” in the RVs hardwood floor caused by the moisture; she also testified concerning her constant battle to eliminate the RVs sour odor. From that evidence, the trial court could reasonably have concluded that the Postens were entitled to a $2,000 mental-anguish award. See generally Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301 (Ala.1991) (allowing recovery of mental-anguish damages under the UCC).
On cross-appeal, the Postens contend that the trial court erred in denying their request for an attorney fee. Specifically, they contend that the Magnuson-Moss Act applies and that all prerequisites for an award of an attorney fee have been satisfied. Forest River argues that the Magnuson-Moss Act does not apply because the trial court entered a summary judgment for Forest River on the Postens’ Magnuson-Moss Act claim. However, § 2310(d)(2) of the Magnuson-Moss Act authorizes the award of an attorney fee to prevailing.plaintiffs in warranty actions at the discretion of the trial judge.
Section 2310(d) of the Act provides in pertinent part:
“(1) Subject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—
“(A) in any court of competent jurisdiction in any State ....
“(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorney’s fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commence *962 ment and prosecution of such action, unless the court in its discretion shall determine that such an award- of attorneys’ fees would be inappropriate.”
15 U.S.C. § 2810(d) (emphasis added).
Section 2810(e) provides:
“No action ... may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty ... unless the person obligated under the warranty ... is afforded a reasonable opportunity to cure such failure to comply.”
15 U.S.C. § 2310(e).
Thus, the clear language of the Magnu-son-Moss Act allows recovery of an attorney fee by a consumer who prevails in a breach-of-warranty action against a seller under state law, provided the seller is given an opportunity to cure. See Champion Ford Sales, Inc. v. Levine, 49 Md.App. 547, 433 A.2d 1218 (Ct.Spec.App.1981); see also Horton Homes, Inc. v. Brooks, 832 So.2d 44, 54 (Ala.2001) (affirming an award of $34,612.50 in attorney fees and $5,340.03 in costs, pursuant to the attorney-fee provision of the Magnuson-Moss Act where the plaintiff prevailed on his express-warranty claim).
As noted previously, Forest River’s warranty warranted against substantial defects in materials and workmanship. The Postens’ claims — that the RV leaked when it rained, which resulted in damage to the floor and a sour smell, and that the leveling jacks engaged while the RV was in use — both involve defects in either, or both, the materials and the workmanship. Forest River was provided an opportunity to cure these defects. Because the Pos-tens succeeded on their express-warranty claim after affording Forest River the opportunity to cure, the Magnuson-Moss Act permits the assessment of an attorney fee against Forest River. 15 U.S.C. § 2310(d)(2) & (e); see Guerdon Indus., Inc. v. Gentry, 531 So.2d 1202, 1210 (Miss.1988) (awarding an attorney fee where the written warranty warranted against defects in “material and workmanship” and the allegations of the plaintiffs “reveal[ed] defects of this very nature”). Therefore, we reverse the trial court’s denial of an award of an attorney fee under the Mag-nuson-Moss Act and remand the case to that court for it to determine, in its discretion, whether an award of an attorney fee to the Postens is warranted and, if so, to determine an appropriate attorney-fee award.
APPEAL — AFFIRMED.
CROSS-APPEAL — REVERSED AND REMANDED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.