[No. B075776. Second Dist., Div. Three. Apr. 3, 1995.]

NANCY J. SCHREIDEL, Plaintiff and Respondent, v.
AMERICAN HONDA MOTOR CO., INC., Defendant and Appellant.

COUNSEL

Robert W. Beck for Defendant and Appellant.

Alan R. Golden for Plaintiff and Respondent.

OPINION

ALDRICH, J.—

## INTRODUCTION

Defendant and appellant American Honda Motor Co., Inc., (Honda) appeals from the judgment entered following a jury verdict in favor of plaintiff and respondent Nancy J. Schreidel (Schreidel) in her action for damages arising out of alleged violation of the Song-Beverly Consumer Warranty Act, sometimes known as the California Lemon Law (the Act).

Honda contends the jury's verdict is not supported by substantial evidence.

We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[1] occasions.

Schreidel purchased a new manual transmission 1989 Honda Prelude (the car) in October 1989. Within the first 2,000 miles of use, Schreidel experienced difficulty with the clutch. While stopped in traffic, she was unable to

---

[1] The record does not contain the complaint or other pretrial matters.

shift from neutral into first gear. She continually tried to take her foot off the clutch and reshift, as recommended in the owner's manual. She was unable to move for one-half to one full minute. Cars started beeping behind her and she "started to panic." Eventually she got the car into first gear. This was unlike ordinary misshifting experiences where one can successfully shift by taking the foot off the clutch and trying again. This happened numerous times, with cars honking and people shaking their fists at her on about 10 additional occasions.

When she informed the selling dealer of the problem, Schreidel was told the car was "breaking in." She brought the car into authorized Honda repair facilities on six separate occasions between January and December 1990. Nevertheless, the problem continued.

In addition, in September 1990, a new problem appeared. When Schreidel depressed the clutch pedal, it would come back about half way and stick there for a while, then pop back up, hitting the bottom of her foot. Although both problems were the subject of repair attempts, the problems became "progressively worse."

Schreidel's fiancé also experienced the shifting and the clutch sticking problems and was a passenger several times when the clutch pedal stuck while Schreidel was driving.

Schreidel found the clutch problem "very annoying" and she worried about it happening. "It took my mind off of the road a lot of times because all of a sudden it'd start popping again." She avoided long-distance drives, and in fact borrowed her fiancé's car on 15 to 16 days for out-of-town or long trips.

Schreidel had her car serviced at Scott Robinson Honda and complained about the problems. The mechanics could not duplicate the problems but adjusted the clutch a number of times. Scott Robinson replaced certain components of the clutch as a goodwill gesture. The repair record indicated the clutch had been replaced. The clutch replacement did not eliminate the shifting problem.

Experiencing the clutch pedal sticking on one occasion, Schreidel drove into a Chevron station. George Conley, a mechanic at the station, observed the clutch pedal sticking and talked to Scott Robinson Honda on the telephone at Schreidel's request.

Schreidel presented expert testimony of Louis Nanos, an automotive consultant. He testified that he inspected Schreidel's car and observed both

problems. He videotaped the pedal sticking problem from inside the engine compartment as well as inside the passenger area. There was no evidence that Schreidel rode her clutch and the clutch system was clean and well-maintained. On a test drive he experienced the problem of being unable to shift into first gear without violent force. This was not misshifting, and was not a blocking phenomenon caused by synchronizers designed to stop shifting too quickly. Based upon his review of the Honda work orders, the deposition testimony of the Honda's field investigator, his own 18-year experience in the field, and his examination and inspection of the car, Nanos opined the problems were caused by the slave cylinder.

Schreidel called the customer relations department of Honda regarding her complaints. Judy Wilson called the dealership's service manager for information and entered into her records that the "customer came in with supposed clutch problem," and "problem is customer." The records contained information that Schreidel was leasing the car and needed to get out of it. Schreidel requested Honda to buy back the car or sell her a new one a little cheaper. But the customer relations department could not help her because they were only authorized to offer to fix the problem. They were not authorized to do anything about a buy-back. Ms. Wilson advised the dealer "not to repair unless problem found," and closed the file. The department's records contained an entry referring to the theory that "customer is trying to get out of car, closing file." Schreidel's letter to the president of Honda was turned over to Ms. Wilson. Ms. Wilson wrote Schreidel telling her that Honda would do nothing further unless Honda found a problem.

Schreidel instituted arbitration proceedings where she introduced a videotape which demonstrated the clutch pedal was sticking. Honda's field investigator did not contact Schreidel until about two days before the arbitration hearing in May, although Schreidel had advised Honda about the proceedings in February. The field investigator asked to see the car, but only to fix it, so Schreidel declined. The videotape showed the investigator that the sticking problem was "a fact."

In October Schreidel traded the car in at a Nissan dealership. The price she received was deducted from Schreidel's damages. The Nissan used car manager testified that before the car was resold, a Honda representative picked up the car and when it was returned told him Honda had put in a new clutch.

Honda maintained at trial that Schreidel was experiencing a normal operation of a vehicle with synchromesh in first gear. The synchromesh system was designed to prevent the gears from grinding. The owner's

manual discussed a means to prevent gears grinding. Kenneth Illman, Honda's field representative, observed the clutch pedal sticking for the first time in the videotape shown at the arbitration hearing and at trial admitted that the problem was either in the throwout bearing or the slave cylinder, parts of the clutch system, and that replacing the entire system would cure the clutch sticking problem.

The jury rendered a special verdict entitling Schreidel to judgment for actual damages including accrued interest in the amount of $8,272 together with statutory penalty damages in the amount of $16,544. She was awarded costs, including attorney fees.

Honda appeals.

## CONTENTIONS

Honda contends:

1. "The trial court erred when it denied Honda's motions for judgment notwithstanding the verdict and for a new trial."[2]

2. "There was no objective evidence presented by plaintiff to sustain the jury's verdict."

3. "The jury should never have been permitted to hear the speculative opinions of plaintiff's expert, Mr. Nanos, which [were] objected to by the defendants."

4. "There is a lack of substantial evidence to support the jury's award of civil penalties against Honda."

Schreidel contends:

1. "Ample evidence supports the jury's finding of substantial impairment of 'use,' 'value' or 'safety' to Schreidel."

2. "Mr. Nanos expressed proper, not 'speculative,' opinions."

3. "The jury properly awarded a civil penalty under Civil Code section 1794."

---

[2]The record does not contain these motions.

## DISCUSSION

1.  *The Requirements of the Song-Beverly Act, The Lemon Law.*

The Lemon Law, Civil Code section 1793.2, requires the manufacturer of consumer goods sold in this state for which the manufacturer has made an express warranty to maintain sufficient service and repair facilities to carry out the terms of those warranties. (§ 1793.2, subd. (a)(1)(A).) Service or repairs of nonconforming goods must be commenced within a "reasonable time," and completed within 30 days unless the buyer agrees in writing to the contrary. (§ 1793.2, subd. (b).)

Civil Code section 1793.2, subdivision (d) provides: "(d)(1) Except as provided in paragraph (2), if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity.

"(2) If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer. . . . However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle."

"Nonconformity" is defined as "a nonconformity which substantially impairs the use, value, or safety of the new motor vehicle to the buyer or lessee." (Civ. Code, § 1793.22, subd. (e)(1).) The term is similar to what the average person would understand to be a "defect." (*Ibrahim* v. *Ford Motor Co.* (1989) 214 Cal.App.3d 878, 887 [263 Cal.Rptr. 64].)

The Act provides that a buyer who is damaged by a failure to comply with their obligations under the Act, or under an implied or express warranty, may bring an action for damages and other legal and equitable relief. (Civ. Code, § 1794, subd. (a).) "If the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages. . . ." (§ 1794, subd. (c).)

In regard to the *willful* requirement of Civil Code section 1794, subdivision (c), a civil penalty may be awarded if the jury determines that

the manufacturer "knew of its obligations but intentionally declined to fulfill them." (*Ibrahim* v. *Ford Motor Co., supra*, 214 Cal.App.3d at p. 894.) There is no requirement of blame, malice or moral delinquency. (*Ibid.*) However, ". . . a violation is not willful if the defendant's failure to replace or refund was the result of a good faith and reasonable belief the facts imposing the statutory obligation were not present." (*Kwan* v. *Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 185 [28 Cal.Rptr.2d 371].)

Civil Code section 1794, subdivision (e) permits penalties when the consumer goods at issue are new motor vehicles and the buyer establishes a violation of the restitution or replacement provisions of section 1793.2, subdivision (d). It contains no willfulness requirement but does not apply if the manufacturer maintains a third party dispute resolution process which complies with section 1793.22. In such a case, a manufacturer may still be liable for a willful violation under section 1794, subdivision (c). (*Jernigan* v. *Ford Motor Co.* (1994) 24 Cal.App.4th 488, 492-493 [29 Cal.Rptr.2d 348].)

A plaintiff cannot recover both types of penalties for the same violation. (Civ. Code, § 1794, subd. (e)(5).) The record does not reveal the basis of the penalty award in this case.

### 2. *Substantial Evidence Supports a Finding of Substantial Impairment.*

Due to the intermittent problems, Schreidel avoided using her car for long trips, thereby reducing its usefulness and value to her. There is no question that a delay in shifting into first is similar to stalling, a dangerous situation on the highway. (See *Ibrahim* v. *Ford Motor Co., supra*, 214 Cal.App.3d at p. 883 [vehicle's engine tended to surge or die unexpectedly, once on railroad tracks].) Schreidel experienced panic when she could not shift into first gear. She felt as though she never had a new car. The problems were becoming worse as the car aged. Schreidel had lost confidence in the car and attempted to replace it. The jury could determine that the value of the goods to this particular buyer was substantially impaired. (*Champion Ford Sales, Inc.* v. *Levine* (1981) 49 Md.App. 547, 553 [433 A.2d 1218, 1222].)

The issue of whether the problems constituted substantial impairment is one for the trier of fact. (*U.S. Roofing, Inc.* v. *Credit Alliance Corp.* (1991) 228 Cal.App.3d 1431, 1445 [279 Cal.Rptr. 533] [similar term used in Cal. U. Com. Code, § 2608]; *Champion Ford Sales, Inc.* v. *Levine, supra*, 49 Md.App. at p. 553 [433 A.2d at p. 1222].) The jury was instructed that "[a] nonconformity in the manufacture of a vehicle means a defect in material or workmanship of a factory-installed part." Also, it was instructed that plaintiff had the burden of proving by a preponderance of the evidence that the

car suffered from one or two nonconformities and "[a]ny such nonconformity or nonconformities must have substantially impaired the use, value, or safety of the vehicle to plaintiff during the express warranty period."

There is no indication in the record that Honda requested additional instructions on the issue of nonconformity. However, in argument, Honda's counsel underscored the significance of the term, "substantially." "And substantially means exactly essentially what it says. The law says it means it's a major defect. It must be major. It can't be minor, can't be trivial. It must be major."

The thrust of Honda's appeal is that the problems Schreidel had with her car did not *substantially* impair its use, value or safety. Honda claims Schreidel failed to meet her burden of proof on this issue.[3] Honda contends the legislative history indicates the law was intended to address major, not minor, problems.[4]

Viewing the evidence in the light most favorable to Schreidel (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]), we find substantial evidence supports the jury's finding that the nonconformities resulted in substantial impairment of the use, value and safety of Schreidel's car for purposes of the Lemon Law.

### 3. *The Testimony of Schreidel's Expert.*

Honda contends Nanos's testimony and expert opinion was based on speculation and was inadmissible because he did not conduct scientific testing, disassembly of the car or conduct any independent investigation.

An expert's opinion is admissible if, "Based on matter (including his special knowledge, skill, experience, training, and education) perceived by

---

[3]Honda turns to out-of-state cases. In *Mercedes-Benz* v. *Garten* (1993) 94 Md.App. 547 [618 A.2d 233], the court found that a delayed upshift, which was caused by an emissions control device, was in fact the way the 1990 300E was designed. Honda points out that the court stated, in discussing whether the car breached the warranty of fitness for ordinary purposes, that there was no evidence, other than Mr. Garten's fear of being hit from behind by speeding cars, that the 1990 300E was unsafe in any way. However, the court did not address the meaning of substantial impairment for purposes of the Lemon Law. The court simply held Garten could not recover under the Lemon Law because he waived any remedy by trading the automobile in to another dealer instead of returning it as required by Maryland's law. Contrary to the implication of Honda's argument, the defects in Schreidel's car were not found to be due to an intentional design, the synchromesh system, as Honda argued at trial.

[4]Honda refers to an isolated report regarding revisions to the Act. The digest portion of a report of Assembly Bill No. 2057, as amended, September 4, 1987, employs the term "major defect" in defining "reasonable number of [repair] attempts." However, neither the report nor the bill addresses the definition of "nonconformity."

or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." (Evid. Code, § 801, subd. (b).)

In *Hyatt* v. *Sierra Boat Co.* (1978) 79 Cal.App.3d 325 [145 Cal.Rptr. 47], expert testimony was properly excluded because it was to be based upon speculation. The expert was to testify as to the probable speed of a vehicle before impacting a boat trailer. He intended to base his estimate upon an assumption about the vehicle's path between the impact with the boat trailer and a second impact with a pole. However, there had been no evidence presented in the trial of any sliding or rolling of the vehicle prior to the second impact. The court said, "It is apparent that the defendant's proffered evidence would have been speculative, conjectural and remote in nature . . . ." (*Id.* at p. 338.) "It is well settled that an expert's assumption of facts contrary to the proof destroys the opinion. . . ." (*Ibid.*, citation omitted.)

Nanos testified as to his 18- or 19-year background in the field of automotive repairs and mechanics; he was an automotive mechanic, service manager, service and parts director, body shop manager, dealership training coordinator and warranty administrator. Nanos had extensive experience with Honda automobiles and with clutch systems identical or similar to that of the 1989 Prelude. Nanos now had his own business called Automotive Consumer Services and had testified in court as a qualified expert witness on automobile safety matters 42 times.

Nanos personally examined Schreidel's car, observed the shift pedal problem she had been complaining about, videotaped the problem, inside the car and inside the engine compartment, and drove the car and experienced the problem with shifting into first gear. Based upon his observations, an examination of the repair order history, the Honda service manual and some independent service manuals for Hondas, and his experience with the mechanics of clutches, Nanos opined the clutch system was causing the shifting problem and the pedal binding was caused by the master cylinder push rod or the slave cylinder binding.

Honda fails to identify the supposed speculative basis of Nanos's conclusion, but ridicules the "touch test," in which Nanos discerned that the slave cylinder was binding. Honda complains of the absence of scientific tests or disassemblage to demonstrate the exact cause of the problems. Contrary to Honda's assertions, Nanos's opinion that the problems Schreidel experienced with the car were due to a defective clutch system was based upon

evidence introduced at trial and upon his own firsthand observation. He did not rest his opinion upon unsupported assumptions. Nanos opined there was a defective slave cylinder; it was not necessary to pinpoint the exact mechanical detail within the slave cylinder of the clutch system to prove Schreidel's case. The contention that Nanos's opinion was wild speculation is totally meritless.[5]

"The opinion of an expert is admissible when based upon his special knowledge and upon matter perceived by him or made known to him at the hearing 'that is of a type that reasonably may be relied upon by an expert in forming an opinion . . . .' (Evid. Code, § 801.) An expert may not base his opinion on conjecture . . . but may identify a causative force by a process of eliminating other causes . . . . The strength of his assumptions affects the weight rather than the admissibility of his opinion. . . ." (*People* v. *Sundlee* (1977) 70 Cal.App.3d 477, 484-485 [138 Cal.Rptr. 834]; citations omitted [expert testified arson fire caused by time-delay device which was consumed in the fire].)

### 4. *Substantial Evidence Supports the Jury Finding of Civil Penalties.*

■ The basis of Honda's argument regarding its nonliability for civil penalties is the state of Honda's *knowledge* regarding the defects. Honda claims the record shows that its mechanics were unable to duplicate the problems Schreidel described and that Schreidel herself was unable to duplicate the problems for them while at the dealership.

The jury was instructed on the meaning of "willful":

"If you find that defendant [Honda] failed to comply with its obligations under the law previously read to you and if you determine that the failure to comply was willful, your verdict may include a civil penalty against such defendant.

"The word willful when applied to the intent with which an act is done or omitted and as used in these instructions, simply implies a purpose or willfulness to commit the act or to make the omission in question.

"The word willful does not require an intent to violate the law nor does it require an intent to injure or damage another or to acquire an advantage over another.

---

[5]In its opening brief, Honda states Honda was able to properly diagnose the problem and offered to repair that condition when the clutch pedal sticking problem revealed itself on the videotape.

"In making this determination you may consider whether defendant [Honda] knowingly failed to follow its obligations to plaintiff required by law including whether it unreasonably failed to replace the subject vehicle or refund the purchase price when obligated to do so."

Honda does not challenge the correctness of the instruction, but argues that the only knowledge Honda had was that Schreidel's complaints could not be duplicated by their authorized Honda dealers. Honda points out that it offered to repair the condition once a Honda representative viewed the expert's videotape.

What Honda ignores in the record, however, is that the problems were admittedly intermittent, that Schreidel had brought the problems to the dealership's attention on six separate occasions, and that an independent service station mechanic reported his observation of the pedal sticking problem to the dealership. Honda's attempts to duplicate the problems were minimal and, even after Schreidel brought the matter to arbitration and demonstrated the problem, Honda only offered to repair, not replace, the car as required by statute.

The record demonstrates that Honda made no serious attempt to discover the cause of Schreidel's complaints. Rather, the record shows that Honda tended to attribute ulterior motives to Schreidel and failed to diagnose the problems even though Schreidel brought the car into a Honda dealership for repair over an 11-month period on 6 separate occasions. In late September 1990, the service manager at the dealership advised Schreidel that the matter was out of his hands and that a field representative would contact her. Despite repeated calls and letters, no representative contacted her or examined the car until May 1991, two days before an arbitration hearing Schreidel had instituted to obtain a replacement. Then the representative asked to look at the car in order to fix it, not to replace it. The customer relations department characterized her complaints as a customer problem and closed its file when the dealership could not duplicate her complaints. No procedure was ever instituted to replace her car.

The statute requires the manufacturer to either "promptly replace" a new vehicle which it is unable to conform to the applicable express warranties after a reasonable number of attempts, or make restitution to the buyer. (Civ. Code, § 1793.2, subd. (d)(1) and (2).)

The jury was properly instructed and substantial evidence supports its finding that Honda willfully failed to comply with its obligation to replace or make restitution, thereby entitling Schreidel to an award of penalties in

addition to damages. (Civ. Code, § 1794.)   **(6)**   Section 1794 also authorizes an award of attorney fees to the consumer who prevails. Such fees are properly awarded for her appellate efforts and should be set by the trial court upon remand. (*Morcos* v. *Board of Retirement* (1990) 51 Cal.3d 924, 927 [275 Cal.Rptr. 187, 800 P.2d 543]; *Suman* v. *BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 13 [28 Cal.Rptr.2d 133].)

### Disposition

Judgment affirmed. The matter is remanded to the trial court to set an amount for Schreidel's attorney fees on appeal. Schreidel is awarded costs on appeal.

Kitching, Acting P. J., and Luke, J.,* concurred.

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.