[No. B133232. Second Dist., Div. Four. Feb. 28, 2001.]

WILLIAM R. LUNDY, Plaintiff and Respondent, v.
FORD MOTOR COMPANY et al., Defendants and Appellants.

**COUNSEL**

Bowman and Brooke, Brian Takahashi and Mark I. Melo for Defendants and Appellants.

Bannan, Green, Frank & Terzian and Ronald F. Frank for Mercedes-Benz USA as Amicus Curiae on behalf of Defendants and Appellants.

Law Offices of Lawrence J. Hutchens, Lawrence J. Hutchens and Michael S. Humphries for Plaintiff and Respondent.

Anderson & Anderson and Martin W. Anderson for Consumer Advocates as Amicus Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**EPSTEIN, J.**—Plaintiff brought an action for breach of implied and express warranty under the Song-Beverly Consumer Warranty Act. (Civ. Code, § 1790 et seq., the Act) [1] The jury rendered a verdict in favor of plaintiff. On appeal, defendants, Ford Motor Company and South Bay Ford, Inc., argue the court's answer to a jury question about the meaning of "substantially" constituted reversible error. We agree.

---

[1]All statutory references are to the Civil Code unless otherwise stated.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff, William R. Lundy, purchased a new 1997 Ford F150 vehicle in March 1997 from South Bay Ford in Hawthorne, California. The vehicle was covered by a bumper-to-bumper warranty for three years or 36,000 miles.

Plaintiff had his vehicle serviced at Peyton-Cramer Ford numerous times within the first year. His complaints ranged from cracking noises during turns to sticking windows. His two repetitive complaints concerned an odor emanating from the air conditioning system and transmission-related problems.

Plaintiff had his vehicle serviced five times between June 23, 1997, and February 18, 1998, for the air conditioning system odor, which he described as "dirty, musty, and stinky." On each of the first four occasions, the system was deodorized. On the fifth, February 18, 1998, no repair was made because the odor was not verified by Ford technicians.

Plaintiff also complained of transmission-related problems on four different occasions, but Ford technicians could not substantiate his concerns. On July 1, 1997, he complained that the clutch slipped on acceleration. Later that month, he complained that the transmission slipped between second and third gear. Plaintiff testified that he complained of a shift in transmission in October 1997. Finally, in February 1998, he told technicians that the vehicle jerked or surged while slowing to stops in overdrive.

Shortly after the last repair attempt was made, and the odor and transmission-related complaints were not corrected to his satisfaction, plaintiff requested a replacement or repurchase of his vehicle from Ford. His request was refused. Plaintiff then brought an action for breach of implied and express warranty under the Act. The jury rendered a verdict in favor of plaintiff, and judgment was entered on the verdict. Defendants filed this timely appeal.

## DISCUSSION

### I

The Act, commonly known as the Lemon Law,[2] provides protection for consumers against defective products. If a manufacturer or its representatives cannot service or repair a new motor vehicle in conformance with the

---

[2]See *Schreidel v. American Honda Motor Co.* (1995) 34 Cal.App.4th 1242, 1249 [40 Cal.Rptr.2d 576].)

express warranties after a reasonable number of attempts, the manufacturer must either replace the vehicle or make restitution to the buyer. (See § 1793.2, subd. (d).) In his suit, plaintiff sought rescission of his purchase contract, restitution, and civil penalties.

The jury was instructed before summation arguments that in order to prevail under the replace-or-repair provision of the Act, plaintiff had to prove the following:

"One, that the plaintiff was a purchaser of a new motor vehicle.

"Two, that in connection with the purchase of the new motor vehicle, Ford Motor Company gave a written warranty concerning the vehicle.

"Three, that the vehicle contained a non-conformity or non-conformities covered by the warranty that *substantially impaired* the use, value, or the safety of the vehicle to the buyer.

"Four, that plaintiff, upon discovery of the non-conformity or non-conformities in the motor vehicle delivered the motor vehicle to the defendant or to their authorized repair facilities for repair.

"Five, that the defendants were unable to repair the non-conformity or non-conformities after a reasonable number of attempts.

"Six, that the defendants did not promptly replace the vehicle or refund the purchase price, less any amount directly attributable to the use by the plaintiff before discovery of the non-conformity.

"Seven, the plaintiff incurred damages as a result of the defendant's conduct." (Italics added.)

On its first day of deliberations, the jury asked for clarification of the term "substantially," as used in this instruction. Defendants submitted a proposed response based upon a dictionary definition: "1. Of, relating to, or having substance; material. 2. Not imaginary; real. 3. Ample. 4. Being of considerable importance, value, degree, amount, or extent." Plaintiff did not propose a response. The court rejected defendants' definition, explaining that "substantial" describes a noun and counsel was required to submit a definition for "substantially," which describes a verb. The court instructed the jury that "substantially" ". . . is an adverb modifying the verb impaired and the use of that term here means that the nonconformity was not imaginary and actually impaired the use, value or safety of the vehicle . . . ." Defendants

argue this definition did not describe the "degree, quantity or extent of an object or condition," and rendered the defined term meaningless.

■ The term derives from sections 1793.2, subdivision (d) and 1793.22, subdivision (e). In construing it, we apply the cardinal principle of statutory construction, that "the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) To determine intent, we look first to the statutory language itself and give effect to its plain meaning. (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

Section 1793.22, subdivision (e) provides: "For the purposes of subdivision (d) of Section 1793.2 and this section, the following terms have the following meanings: [¶] (1) 'Nonconformity' means a nonconformity which substantially impairs the use, value, or safety of the new motor vehicle to the buyer or lessee."[3] The word "substantially" is not defined in the statute.

Plaintiff argues the definition of "nonconformity" in section 1793.22, subdivision (e) does not apply to the general principles established in section 1793.2, subdivision (d)(2). But the section 1793.22, subdivision (e) definition is explicitly made applicable to section 1793.2, subdivision (d): "For purposes of subdivision (d) of Section 1793.2 and this section, the following terms have the following meanings: . . ."

Plaintiff also argues that any error in the instruction was invited since defendants proposed a four-part definition of "substantial," of which the court chose one, "not imaginary," and added another, "actually." ■ The doctrine of invited error bars a party from attacking a verdict that resulted from a jury instruction given at that party's request. (See *Stevens v. Owens-Corning Fiberglass Corp.* (1996) 49 Cal.App.4th 1645, 1653-1655 [57 Cal.Rptr.2d 525].) Defendants, however, submitted a comprehensive four-part definition, setting out various meanings of the defined term. The fact

---

[3]Section 1793.2, subdivision (d), states in pertinent part: "(d)(1) Except as provided in paragraph (2), if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity. [¶] (2) If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B). However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle."

that the court selected one part of this definition, added another, and rejected the rest, does not demonstrate invited error on defendants' part. (We do not suggest that defendants' proposed instructions should have been given as offered.)

■ The trial court's definition of "substantially" as "not imaginary and [one that] actually impaired," effectively wrote the term "substantially" out of the statute. Section 1793.22, quoted in part above, was added to section 1793.2 in 1982. (Stats. 1982, ch. 388, § 1, p. 1722.) Before then, the Act referred to "nonconformity" without defining that term. (Stats. 1978, ch. 991, § 7, p. 3061.) The plain meaning of the amended provision is that the nonconformity must be of a degree that "*substantially* impairs the use, value, or safety of the new motor vehicle to the buyer or lessee." (§ 1793.22, subd. (e)(1), italics added.)

Whether the impairment is substantial is determined by an objective test, based on what a reasonable person would understand to be a defect. (See *Ibrahim v. Ford Motor Co.* (1989) 214 Cal.App.3d 878, 887 [263 Cal.Rptr. 64]; see also *Schreidel v. American Honda Motor Co., supra,* 34 Cal.App.4th 1242, 1249.) This test is applied, however, within the specific circumstances of the buyer.

We shall not attempt to draft a pattern instruction defining "substantial" or its adverb form. That task is better left to others, such as the BAJI Committee and the Task Force on Jury Instructions of the Judicial Council. But we offer some suggestions about its meaning. The term modifies its object, "impairment." It injects an element of degree; not every impairment is sufficient to satisfy the statute. The most analogous definition of "substantially" we have found in a context similar to its usage here is in the Uniform Commercial Code, section 2-608. Like the clause at issue here, this provision requires a determination of whether a defect "substantially impairs" the value of goods sold to a buyer. Under it, the trier of fact may consider: "the nature of the defects; the cost and length of time required for repair; whether past repair attempts have been successful; the degree to which the goods can be used while repairs are attempted; [inconvenience to buyer]; and the availability and cost of alternative goods pending repair . . . ." (Annot., What Constitutes "Substantial Impairment" Entitling Buyer to Revoke His Acceptance of Goods Under UCC § 2-608(1) (1996) 38 A.L.R. 5th 191, 223.) It may be that this term, like "reasonable," is incapable of precise definition. (See *People v. Brigham* (1979) 25 Cal.3d 283, 308 [157 Cal.Rptr. 905, 599 P.2d 100] (conc. opn. of Mosk, J.) [discussing "reasonable" in the context of CALJIC No. 2.90, the beyond a reasonable doubt pattern instruction used in criminal cases].) At the least, the requirement is not satisfied by any impairment, however insignificant, that affects use, value, or safety.

## II

Defendants argue that the erroneous jury instruction requires reversal. To succeed, they must show that the error was prejudicial (Code Civ. Proc., § 475), resulting in a "miscarriage of justice." (Cal. Const., art. VI, § 13.) A "miscarriage of justice" occurs when it is " '. . . reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*In re Marriage of Jones* (1998) 60 Cal.App.4th 685, 694 [70 Cal.Rptr.2d 542].)

Both sides cite a leading case, with a name remarkably apt to this discussion, *LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946]. *LeMons* described five factors to be considered in determining prejudice. These are: "(1) the degree of conflict in the evidence on critical issues . . . ; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect . . . ; (3) whether the jury requested a rereading of the erroneous instruction . . . or of related evidence . . . ; (4) the closeness of the jury's verdict . . . ; and (5) the effect of other instructions in remedying the error . . . ." (*Ibid.*, citations omitted.)

In their appellate briefing, defendants focus solely on the air conditioning odor as the basis for the verdict and ignore the transmission-related problems in their analysis. The parties disputed whether a transmission-related problem existed and whether it was presented to Ford on the requisite number of occasions. There is no conflict in the evidence, however, that the transmission-related problem, if it existed, did substantially impair the use, value, or safety of the car. Plaintiff's expert, Richard Bettendorf, testified that it would, and defendants presented no evidence to dispute that assessment.

The state of the evidence was different with respect to the air conditioner. For that condition, the parties agreed that an odor existed, and disputed whether it substantially impaired the use, value, or safety of the car. We do not know whether the jury relied on one or both of the alleged nonconformities to reach its verdict.

The defense argued the odor was of short duration and not correctable, and hence not something that substantially impaired the use, value, or safety of the vehicle. Its expert witness, Eric Gillander, testified that the odor lasted for less than a minute, possibly 30 to 45 seconds. He also testified to a non sequitur: the odor did not impair the value and safety of the vehicle because "those kinds of problems are not correctable." Another defense expert,

Ronald Andersen, described the odor as "unpleasant" and "irritating," but not one that would affect the value of the vehicle since it is present across all product lines and depends on atmospheric conditions.

Plaintiff testified that the odor never got better and that it affected the value of his car. Bettendorf, his expert witness, testified that the various alleged problems of the car, including the air conditioning odor, impaired its value. In sum, there was conflict on the critical issue of whether the odor substantially impaired the use, value, or safety of the new car.

Plaintiff's argument to the jury, the second factor in the *LeMons* test, also contributed to the instruction's misleading effect. (See *LeMons v. Regents of University of California, supra,* 21 Cal.3d at p. 876.) Although plaintiff's counsel used the term "substantially impairs" in closing statement, when he described the test in detail he omitted the qualifying term. He stated: "Everyone says there is an air conditioning non-conformity. It is up to you to determine whether it impaired the use, value, and safety to Mr. Lundy." By excluding the qualifying term "substantially" from his description of what the jury needed to find, plaintiff's counsel implied that the jury could find for plaintiff on the basis of *any* impairment that affected the use, value, or safety of the vehicle. That, as we have seen, is essentially what the jury was told in the supplemental instruction.

What we are left with are two different theories of what constituted a substantial impairment. The error in instruction affected one of them. The jury returned a general verdict, so we do not know whether its verdict was based on one theory or another, or both. Its request for clarification of the word "substantially" indicates that it was focused on the odor, implicating the legal error.

The general law on the subject is well established. ■ Where two theories are presented to a jury, of which only one is supported by substantial evidence, and a general verdict is returned in favor of the plaintiff, it is presumed that the verdict was based on the theory that is supported by the evidence. But where the jury is permitted to choose between two factual theories, is misinstructed as to the legal requisites for one of them, and there is no way to eliminate the likelihood that the jury chose the theory affected by the instructional error, "it is likely that the jury, following the instructions, reached an improper verdict." ■ That is what happened in this case. Reversal is required. (*Carpiaux v. Peralta Community College Dist.* (1989) 215 Cal.App.3d 1220, 1225-1226 [264 Cal.Rptr. 208]; essentially the same rule applies in criminal cases: see *People v. Guiton* (1993) 4 Cal.4th 1116, 1125 [17 Cal.Rptr.2d 365, 847 P.2d 45] and *Griffin v. United States* (1991) 502 U.S. 46, 58 [112 S.Ct. 466, 473-474, 116 L.Ed.2d 371].)

## DISPOSITION

The judgment is reversed. Defendants are to have their costs on appeal.

Vogel (C. S.), P. J., and Hastings, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 20, 2001.