# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3230

_____

Paul Sipe,                              *
                                        *
              Appellant,                *
                                        *   Appeal from the United States
       v.                               *   District Court for the
                                        *   District of Minnesota.
Workhorse Custom Chassis, LLC,          *
                                        *
              Appellee.                 *

_____

Submitted: June 11, 2009
Filed: July 16, 2009

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Paul Sipe appeals the district court's[1] grant of summary judgment to Workhorse Custom Chassis, LLC ("Workhorse") on Sipe's claims that Workhorse violated Minnesota's "lemon law" and the Magnuson-Moss Warranty Act ("MMWA") by failing to repair his motor home. For the reasons discussed below, we affirm.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

## I.     BACKGROUND

On September 18, 2004, Paul Sipe purchased a motor home manufactured by Fleetwood Motor Homes of Pennsylvania, Inc. ("Fleetwood"), from Brambillas, Inc. ("Brambillas"), an authorized Fleetwood motor home dealer and repair facility located in Minnesota. Workhorse manufactured the motor home's chassis, which included the motor home's supporting frame, engine, transmission, and certain electrical components. Sipe purchased the motor home for $105,616.75, and Brambillas delivered it to Sipe on October 21, 2004. Sipe received an owner's manual with the motor home that contained Workhorse's limited warranty for the chassis.

Sipe began experiencing problems with the motor home's engine shortly after he bought it. The engine stalled on three occasions while being driven by Sipe, once in October 2004, once in May 2005, and once in June 2005. Sipe brought the motor home to Brambillas for repairs after each stalling incident. After the first incident, Brambillas conducted diagnostic tests but made no repairs because it found no defect in the engine. Sipe testified in his deposition that after the second and third incidents, Brambillas claimed it performed diagnostic tests and found no defect but that the work order he received contained no indication that Brambillas performed any such tests. Sipe further testified that the last time the engine stalled was in June 2005 and that the engine problem has not prevented him from taking trips in the motor home.

In February 2006, Sipe listed the motor home for sale for the price of $94,900. After receiving only two offers at lower prices, Sipe reduced the listing price to $84,900, the Kelley Blue Book value of the motor home. Sipe testified that he ultimately decided to reduce the price because of a crack in the kitchen counter and that he did not recall any other defects that contributed to his decision to reduce the asking price. Sipe did not sell the motor home.

In January 2007 and December 2007, Sipe experienced problems with the motor home's transmission when he discovered that transmission fluid had leaked. Sipe testified that Brambillas refused to diagnose or repair the transmission after both incidents of fluid leakage.

Sipe brought this action against Workhorse and Fleetwood in the District Court for Hennepin County, Minnesota, alleging violations of Minnesota's lemon law, Minn. Stat. § 325F.665, breach of warranty under the MMWA, 15 U.S.C. § 2301 *et seq.*, and revocation of acceptance under Minn. Stat. § 336.2-608. Workhorse and Fleetwood removed the case to federal district court pursuant to 28 U.S.C. §§ 1441 and 1446. Both Workhorse and Fleetwood filed motions for summary judgment, which the district court granted. The court dismissed Sipe's lemon law claims, finding that Sipe presented no evidence that the alleged engine defect required repair or that the defect substantially impaired the motor home and concluding that Sipe's claim regarding the transmission was time-barred. The court dismissed Sipe's breach of warranty claims, finding no evidence that Workhorse "cannot or will not repair the allegedly defective engine" or that the transmission fluid leak required repair. The court also dismissed Sipe's revocation claim, holding that Sipe's revocation of acceptance was not unequivocal. Sipe appeals the district court's grant of summary judgment to Workhorse on his lemon law and breach of warranty claims.[2]

---

[2]Initially, Sipe also appealed the district court's grant of summary judgment to Fleetwood, but he settled with Fleetwood shortly after filing the notice of appeal. Thus, this appeal proceeds only against Workhorse. Moreover, although Sipe's list of issues in his notice of appeal included the district court's dismissal of his revocation claim, his appellate brief addresses only the district court's decisions with respect to his lemon law and breach of warranty claims. Therefore, Sipe has waived any argument regarding his revocation claim. *See Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008).

## II.    DISCUSSION

We review de novo a district court's grant of a motion for summary judgment. *J.E. Jones Constr. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007). "Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.*

### A.    Lemon Law

Sipe contends that the district court erred in granting summary judgment to Workhorse on his lemon law claim because Workhorse failed to repair his motor home's engine and transmission.  Minnesota's lemon law provides:

> If the manufacturer, its agents, or its authorized dealers are unable to conform the new motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use or market value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall either replace the new motor vehicle with a comparable motor vehicle or accept return of the vehicle from the consumer and refund to the consumer the full purchase price . . . .

Minn. Stat. § 325F.665, subdiv. 3(a).  The manufacturer must make the required repairs if "the consumer reports the nonconformity to the manufacturer, its agents, or its authorized dealer during the term of the applicable express warranties or during the period of two years following the date of original delivery of the new motor vehicle to a consumer, whichever is the earlier date."  Minn. Stat. § 325F.665, subdiv. 2.

-4-

### 1. Engine Stalls

After thoroughly reviewing the record, we conclude that Sipe failed to present evidence showing a genuine issue of material fact about whether the engine stalls "substantially impair[ed] the use or market value of the motor [home]," as required by Minnesota's lemon law. *See* § 325F.665, subdiv. 3(a). In response to being asked if the engine defect "ever prevented [him] from going somewhere [or] taking a trip with [his] motor home," Sipe replied "no." In fact, Sipe traveled over 11,000 miles in the motor home since the first time the engine stalled. As Sipe explained, "I don't know if [the engine problem] affect[s] my use now because I know how to deal with it." Sipe also stated that he had not experienced an engine stall since June 2005. Thus, Sipe's own testimony shows that the engine defect has not impaired his use of the motor home; it follows that the defect has not substantially impaired his use.

With respect to the effect of the engine defect on the market value of the motor home, Sipe argues that the low number of offers he received for the motor home shows that its market value was substantially impaired. However, Sipe cannot avoid summary judgment by merely relying on his conclusory allegation that the engine defect caused the low number of offers. *See Hugh Chalmers Motors, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 184 F.3d 761, 763 (8th Cir. 1999). Sipe presented no evidence to suggest that his receipt of only two offers was in any way caused by the engine stalls and not some other factor, such as market conditions for used motor homes. He offered no evidence that potential buyers were even aware of the engine stalls, given that he described the motor home as being in "excellent condition" when he originally listed it for sale in February 2006. Sipe testified that he only reduced the original asking price to the Kelley Blue Book value because of a crack in the kitchen counter and that he did not recall any other defects "that played a role in reducing the price." Further, Sipe submitted no other evidence suggesting that the value of the motor home was impaired, such as expert testimony or an appraisal of the motor home. As with his testimony regarding his use of the motor home, Sipe's own

testimony shows that the engine defect has not impaired, substantially or otherwise, the motor home's market value. Accordingly, we conclude that the district court did not err in granting summary judgment on Sipe's lemon law claim with respect to the engine because Sipe has failed to create a genuine issue of material fact concerning whether the engine defect substantially impaired the use or the market value of the motor home.[3]

## 2. Transmission Fluid Leaks

When he received the motor home in October 2004, Sipe received a three-year limited warranty from Workhorse. Thus, to bring an actionable lemon law claim, Sipe must have reported any nonconformities within two years of the date of the original delivery of the motor home. *See* Minn. Stat. § 325F.665, subdiv. 2 (requiring consumers to report a nonconformity "during the term of the applicable express warranties or during the period of two years following the date of original delivery of the new motor vehicle . . . , whichever is the earlier date"). Sipe first reported the transmission fluid leak to Brambillas in January 2007, which was more than two years after the delivery of the motor home. As such, we agree with the district court that Sipe's lemon law claim with respect to the transmission leaks is barred by statute.

---

[3]Sipe argues that the district court erred in concluding that no genuine issue of material fact existed as to whether the engine defect was a nonconformity requiring a repair, as required by the lemon law. *See* § 325F.665, subdiv. 3(a). We agree. *See infra* Part B.1. Nevertheless, because the Minnesota lemon law requires both a nonconformity and that the nonconformity substantially impairs the use or value of the motor vehicle, we affirm the district court's grant of summary judgment on Sipe's lemon law claim with respect to the engine. *See* § 325F.665, subdiv. 3(a)

## B. Breach of Warranty

Sipe asserts that the district court erred in granting summary judgment to Workhorse on his breach of warranty claim because Workhorse failed to repair his motor home's engine and transmission. The MMWA grants the holder of a limited warranty a federal cause of action for a breach of warranty under the applicable state law. *See* 15 U.S.C. § 2310(d). To establish a breach of warranty under Minnesota law, Anderson must prove "the existence of a warranty, a breach, and a causal link between the breach and the alleged harm." *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52-53 (Minn. 1982). The parties agree that the motor home chassis was covered by Workhorse's limited warranty during the relevant time period; however, the parties dispute whether Workhorse breached the warranty and whether such a breach caused Sipe's alleged harm.

### 1. Engine Stalls

Sipe claims that Workhorse breached its warranty by failing to repair the engine within a reasonable time, contending that there is a genuine issue of material fact about whether Workhorse's repair attempts were unreasonable in number, scope, or both. The district court found that after each of Sipe's reported incidents of engine stalling, Brambillas ran diagnostic tests, which revealed no problems with the engine. However, Sipe testified that although Brambillas claimed it tested the engine after he complained for the second and third times, the invoices that Brambillas provided him made no reference to testing the engine. Viewing the facts in the light most favorable to Sipe, *see J.E. Jones*, 486 F.3d at 340, there is a genuine issue of material fact concerning whether Brambillas actually inspected the engine after the second and third times Sipe complained of engine stalling and, consequently, concerning whether diagnostic tests actually showed that there was no defect requiring a repair. Thus, the district court erred by concluding that there was no evidence of a nonconformity requiring a repair and that therefore Workhorse did not breach the warranty. *See*

*Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 75 (Minn. 1981) ("If the seller refuses to repair or replace within a reasonable time, the buyer is deprived of the exclusive remedy [of the warranty].").

Nevertheless, we conclude that the district court did not err in granting summary judgment on Sipe's breach of warranty claim with respect to the engine stalls because Sipe failed to create a genuine issue of material fact as to whether Workhorse's alleged breach caused him any harm.[4] *See Wilson v. Polaris Indus., Inc.*, No. C7-98-676, 1998 WL 779033, at *2 (Minn. Ct. App. Nov. 10, 1998) (unpublished) (affirming the grant of summary judgment where the plaintiff's allegation of damages resulting from a breach of warranty suffered from a lack of evidentiary support); *cf. Peterson*, 318 N.W.2d at 53 (noting the types of harm a plaintiff may claim in support of a breach of warranty claim).

As we discussed with respect to his lemon law claim, Sipe showed no genuine issues of material fact about whether the engine defect impaired his use of the motor home or its value. Sipe also contends that he was harmed because Workhorse's breach caused him to experience panic when the motor home's engine failed in traffic, citing a California appellate court case as persuasive authority. *See Schreidel v. Am. Honda Motor Co.*, 34 Cal. App. 4th 1242, 1250 (Cal. Ct. App. 1995). In *Schreidel*, however, the court found that substantial evidence supported the jury's finding that the plaintiff's vehicle was impaired because the plaintiff "avoided using her car for long trips, thereby reducing its usefulness and value to her[,] . . . [and] experienced panic when she could not shift into first gear." *Id.* Sipe offered no evidence that he avoided using his motor home, thereby decreasing its usefulness and value, and he cites no authority for the proposition that experiencing panic because of a defect by

---

[4]Although the district court did not address whether Sipe established the existence of harm as a result of Workhorse's alleged breach, we "may affirm the judgment of the district court on any basis supported by the record." *See Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1143 n.2 (8th Cir. 2008).

itself constitutes harm sufficient to support a breach of warranty claim. Sipe made no further argument in his response to Workhorse's motion for summary judgment or on appeal regarding any other harm that he may have suffered as a result of Workhorse's breach. Therefore, because Sipe has not shown that there is a genuine issue of material fact about whether he suffered any harm as a result of Workhorse's alleged breach of warranty, his breach of warranty claim regarding the engine fails.

## 2. Transmission Fluid Leaks

The district court found that Sipe had not established that repairs to the transmission were necessary, and thus a jury could not reasonably conclude that Workhorse's alleged refusal to repair the transmission constituted a breach of warranty. We agree. According to service technician Bill Hansen's affidavit, the transmission fluid leaks were the normal result of cold weather and were not caused by a defect in the motor home's transmission. The only evidence that Sipe presented to dispute Hansen's assessment was an affidavit from Sipe's expert, Timothy Huttner, which Sipe presented for the first time during the hearing on Workhorse's motion for summary judgment. Workhorse objected to Sipe's submission of the affidavit, and the district court reserved its ruling on the objection. However, the court later implicitly sustained Workhorse's objection in its decision granting Workhorse's summary judgment motion when it found that "there is no evidence that the transmission leak is the result of a defect or nonconformity." *Cf. Luna v. Black*, 772 F.2d 448, 450 n.2 (8th Cir. 1998) (approving the trial court's implicit overruling of an objection related to the admission of records). The district court acted within its discretion when it excluded the Huttner affidavit because it was presented for the first time at the summary judgment hearing. *See* D. Minn. R. 7.1(b)(2) (requiring the party opposing a summary judgment motion to present affidavits at least twenty days prior to the summary judgment hearing); *Brannon v. Luco Mop. Co.*, 521 F.3d 843, 847 (8th Cir.) (noting that district courts "retain[] considerable discretion" over enforcement of local rules), *cert. denied*, 555 U.S. ---, 129 S. Ct. 725 (2008). Therefore, no

evidence in the record supports Sipe's claim that the transmission fluid leak was a defect requiring a repair. Thus, Sipe failed to create a genuine issue of material fact that Workhorse breached its warranty with respect to the transmission. Accordingly, we conclude that the district court did not err in granting summary judgment to Workhorse on Sipe's breach of warranty claim regarding the transmission leak.

## II.   CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to Workhorse.

_____