Filed 10/26/15  Sanders v. Ford Motor Co. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HERBERT SANDERS et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant and Appellant. | B257790<br><br>(Los Angeles County<br>Super. Ct. No. BC484666) |

APPEAL from postjudgment orders of the Superior Court of Los Angeles County. Terry A. Green, Judge.  Affirmed.

Gates, O'Doherty, Gonter & Guy, Matthew M. Proudfoot; Dykema Gossett, John M. Thomas and Tamara A. Bush for Defendant and Appellant.

Rosner, Barry & Babbitt, Hallen D. Rosner; Law Office of Michael H. Rosenstein, Michael H. Rosenstein; O'Connor & Mikhov and Steve Borislav Mikhov for Plaintiffs and Respondents.

_____

Appellant Ford Motor Company (Ford) contends the trial court erred in refusing to issue a judgment notwithstanding the verdict or to order a new trial after entering a jury verdict. The jury found Ford breached its warranty under a lemon law to respondents Herbert Sanders and Christine Sanders (Mrs. Sanders) (collectively the Sanderses). Ford argues there was insufficient evidence to support the jury's verdict and the Sanderses' expert's testimony should have been excluded. We disagree and affirm.

## BACKGROUND

The Sanderses purchased their Ford Fusion in 2011. Less than a month after their purchase, Mrs. Sanders brought the Fusion to a Ford dealer for repairs. She complained the car was harshly shifting and "jerking" into gear when she accelerated from a stop, causing her to be pushed back into her seat. She also complained the car made a whistling or buzzing noise. The dealer replaced the sticking valve body in the transmission to fix the shifting issue and the fuel pump to fix the noise issue. The dealer noted on the service record the noise issue was fixed, but did not record whether the shifting issue was fixed. Mrs. Sanders did not pay for the repairs because her car was still under warranty. The dealer provided her with a complimentary car to drive while hers was being fixed.

A little more than a month later, Mrs. Sanders returned to the dealer and complained of the same issues. The dealer again replaced the fuel pump to fix the noise issue. The dealer reprogrammed the power train control module to fix the shifting issue based on a "technical service bulletin" (TSB), which is guidance issued by Ford to address specific mechanical problems. The reprogramming did not solve the shifting issue. At the advice of a Ford hotline operator, the dealer made further repairs, which included another reprogramming, under a different TSB. The dealer recorded the repairs were successful. Again, the dealer did not charge Mrs. Sanders for the under-warranty repairs and provided her with a complimentary rental car.

A little more than a month later, Mrs. Sanders brought the Fusion to another Ford dealer and complained of the same shifting issues. She did not complain of the noise

2

issues.  The dealer re-performed a TSB the other dealer had tried and recorded the issue was solved.  Again, the dealer did not charge Mrs. Sanders for the under-warranty repairs and provided her with complimentary transportation.

Ten days later, Mrs. Sanders called Ford, explained her problems with the Fusion, and asked Ford to repurchase the car.  At this point, Mrs. Sanders had tried having the shifting issue fixed three times and her car had been in the shop for 22 days collectively.  Ford investigated and denied Mrs. Sanders's request within two weeks after she called.

A few weeks after Ford's denial, Mrs. Sanders returned to the original Ford dealer and complained not only of the original shifting issues but also that the shifting issues were now occurring at speeds of 70 mph.  She did not complain of the noise issue.  The dealer could not replicate the shifting problems in a 138-mile test drive.  After receiving the test drive's results, Mrs. Sanders drove with a dealer technician in the Fusion to see if she could recreate the problem for him.  Mrs. Sanders testified that when she drove the car it shifted hard and she asked the technician if he felt it, but he remained silent.  The dealer subsequently noted the transmission was operating normally.  Again, the dealer did not charge Mrs. Sanders for the under-warranty services and provided her with a complimentary rental car.

A few days later, Mrs. Sanders called Ford again, explained her continuing problems with the Fusion, and asked Ford again to repurchase the car.  Ford said its prior determination could not be overturned and again denied her request.

Subsequently, Mrs. Sanders brought the Fusion into Ford dealers seven more times over a two-year period between 2012 and 2014.  She did not complain of the shifting or noise issues to the dealers during these seven visits.  She testified that although the problems persisted during this time and she knew they could be fixed for free under the warranty, she did not pursue fixing them because she was "frustrated."  She also testified that she did not raise the allegedly ongoing issues because she did not want the dealer to continue attempting to repair the Fusion and she did not want to own the Fusion anymore.

3

The Sanderses sued Ford under a lemon law, the Song-Beverly Consumer Warranty Act (Civ. Code, §§ 1790–1795.8) (the Song-Beverly Act), in 2014.  Ford moved in limine to exclude the Sanderses' expert, Jim Hughes, from testifying at trial because Ford anticipated Hughes would testify about the shifting and noise issues persisting without having witnessed the issues himself or reviewing any objective evidence the problems still existed.  The court denied Ford's motion.  During trial, Hughes testified he had reviewed the Fusion's service record and spoken with others in the automotive industry about Fusions' transmission issues.  He had also observed Ford's expert's testing and inspection of the Sanderses' Fusion.  The inspection did not reveal any problems with the Sanderses' Fusion.  Hughes testified, however, a problem can exist even when targeted tests report normal results.  Hughes testified that he did not further inspect the Fusion himself.  He also testified, however, he did not think further inspection was necessary because the past documented shifting issues proved the transmission was "problematic."

A unanimous jury found in favor of the Sanderses and awarded them $25,413.26 in damages for Ford breaching its warranty and $15,000 as a civil penalty for Ford failing to replace or repurchase the Fusion.  The court denied Ford's motions for judgment notwithstanding the verdict and a new trial.  Ford appealed.

## DISCUSSION

On appeal, Ford argues (1) there was insufficient evidence to support the jury's verdict that Ford failed to fix a defect in the Fusion such that the Fusion was substantially impaired in use, value, or safety and needed to be replaced or repaired as required by the Song-Beverly Act; and/or (2) Ford is entitled to a new trial because Hughes's expert testimony should have been excluded.[1]  We disagree and affirm.

We review the sufficiency of the evidence under a substantial evidence test. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874 (*Bowers*).)  Substantial evidence is """"relevant evidence"""" that is "'reasonable in nature, credible, and of solid

---

[1] Neither side argued instructional error.

4

value'" such that ""'"a reasonable [person] might accept [it] as adequate to support a conclusion."'"" (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 134 (*Jensen*).) Under the substantial evidence test, the court gives the prevailing party the benefit of every reasonable inference and resolves all conflicts in its favor. (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100 (*Oregel*).) If substantial evidence supports the judgment, the court must sustain the judgment even though the court may have reached a different conclusion based on other substantial evidence. (*Bowers*, at pp. 873–874.) A substantial evidence analysis focuses on the quality, not quantity, of evidence, and therefore "the testimony of a single witness, even the party herself, may be sufficient" to sustain the judgment. (*Jensen*, at p. 134; *Oregel*, at pp. 1100–1101.)

We review the denial of Ford's motion for a new trial in light of the admissibility of Hughes's expert testimony; admissibility determinations are reviewed for an abuse of discretion. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.)

## A. Substantial evidence supported the jury's verdict in favor of the Sanderses.

Ford argues there was insubstantial evidence to support the jury's finding that Ford failed to fix the Fusion's noise and shifting issues and should have replaced or repurchased the Fusion. As Ford notes, the Sanderses' Fusion never failed to start or stop. The Sanderses never lost control of the Fusion or had it towed. Mrs. Sanderses testified she has always been able to use the Fusion as she wanted, other than when it was in the shop. This use included daily travel to and from work and stores and out of state road trips which could have been taken in the other car the Sanderses own. The Fusion has not had any documented shifting or noise issues since early 2012. Under a substantial evidence review, however, we disregard this evidence and consider only the evidence favorable to the verdict. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

Mrs. Sanders testified the shifting problem frequently occurred. The Sanderses were and are afraid to drive the car because, according to them, the transmission might break down causing Mrs. Sanders to have an accident or be stranded. The Sanderses also

testified their lack of complaint about the problem from 2012 to 2014 was due to "frustration" and fear of spoliation, not nonexistence. The Sanderses do not believe it is morally or ethically right to sell the Fusion to another and give that person their "headache" and cannot otherwise afford to buy a third car. These fears and beliefs could affect the Fusion's use, safety, or value to the Sanderses. Echoing the Sanderses, Hughes testified the Fusion's transmission was "problematic" and further testified the fact that tests did not reflect the intermittent shifting problem does not conclusively show such a problem does not exist.

The jury was free to give these testimonies whatever weight it wanted, even to the point of it being the only evidence supporting the Sanderses' claim the Fusion's issues were indeed problematic and persistent and Ford had failed to fix them. (See *Jensen*, *supra*, 35 Cal.App.4th at p. 134; *Oregel*, *supra*, 90 Cal.App.4th at pp. 1100–1101.) While a different jury may have drawn the opposite conclusion, that the Sanderses' self-serving testimony is insufficient to conclude the problems persist, this court may not reverse based on that ground alone. (See *Bowers*, *supra*, 150 Cal.App.3d at pp. 873–874.) The Sanderses' and their expert's testimony was substantial evidence for the jury to find the Fusion's issues are problematic and persist and Ford should have replaced or repurchased the Fusion.

It is also possible the jury found the service record alone was substantial evidence that the inconvenience to the Sanderses in trying to fix the Fusion's problems over a period of months was enough to qualify the Fusion as a lemon under the Song-Beverly Act. (Civ. Code, § 1793.2, subd. (d)(2) ["If the manufacturer . . . is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a *reasonable number of attempts*, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer . . . ."], italics added.) In determining whether a car qualifies as a lemon, the jury is allowed to consider "'the cost and length of time required for repair; whether past repair attempts have been successful; the degree to which the goods can be used while repairs are attempted,'" and inconvenience to the buyer. (*Lundy v. Ford Motor Co.* (2001) 87 Cal.App.4th 472, 478.)

6

The Sanderses brought the Fusion into the dealer four times to repair its problems and went without their car, collectively, for weeks. From this evidence, the jury could have concluded the car was not repaired after a reasonable number of attempts. Again, that a different jury may have found the opposite, that it was not a substantial inconvenience for the Sanderses to take the Fusion into their dealer when the under-warranty repairs were costless and the dealer provided interim complimentary transportation, is not enough alone to warrant a reversal. The service record alone was substantial evidence for the jury to find the Fusion qualified as a lemon under the Song-Beverly Act.

The court did not err in denying Ford's motion for judgment notwithstanding the verdict because the Sanderses' testimony, their expert's testimony, and the service record were substantial evidence to support the jury's verdict.

**B.     It was not an abuse of discretion for the court to admit Hughes's testimony.**

Ford argues the trial court erred in admitting Hughes's expert testimony because (1) Hughes's testimony was unfounded because he did not test the Fusion himself, did not base his opinion on objectively verifiable information, and merely parroted the Sanderses; and (2) Hughes's testimony was prejudicial because it added nothing to the Sanderses' testimonies and therefore was a misleading and impermissible credibility determination of the Sanderses' testimonies.

The Evidence Code does not require an expert to have firsthand knowledge to offer opinion testimony. (Evid. Code, § 801, subd. (b).) Rather, an expert is allowed to base opinions on "special knowledge, skill, experience, training, and education," and even inadmissible evidence. (*Ibid*.) To prepare to testify, Hughes reviewed the Fusion's service record; observed tests performed by Ford's expert; spoke with others in the automotive industry; reviewed select TSB's; spoke with the Automatic Transmission Rebuilders Association; and called upon his years of experience working on and teaching about transmissions. He testified, apart from the Sanderses, that part of his experience with transmissions was that they could have "elusive" intermittent problems which did not report on tests. Hughes also testified, again apart from the Sanderses, that Fusions' transmissions were known in the industry to be problematic.

As shown above, Hughes's opinion was based on more than the Sanderses' opinions and was not merely a credibility determination of the Sanderses' testimonies. Likewise, Hughes's opinion was based on more than mere speculation. (See *People v. Curl* (2009) 46 Cal.4th 339, 359 [excluding proposed expert testimony for being "'pure speculation'"].) A trial court has "broad discretion" in making admissibility determinations, and those determinations are overturned only where there is a "'miscarriage of justice.'" (*People v. Williams* (1997) 16 Cal.4th 153, 196–197; *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476.) Given the court found Hughes otherwise properly qualified as an expert and Hughes's opinion was supported, it was not an abuse of discretion to admit his testimony. The jury was allowed to give Hughes's testimony what weight it would, including choosing to disregard Hughes's testimony because he gave no articulable persuasive reasons for determining the Fusion's problems persist.

Because Hughes's testimony was properly admitted, we do not need to reach the prejudice issue. It was not an abuse of discretion for the court to deny Ford's motion for a new trial on the basis that Hughes's expert testimony was inadmissible.

## DISPOSITION

The trial court's postjudgment orders are affirmed. The Sanderses are awarded their costs on appeal under California Rules of Court, rule 8.278.

NOT TO BE PUBLISHED.


LUI, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

8