Filed 11/20/23  Marriage of Bittenson CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Marriage of MARK and TERRI BITTENSON. | 2d Civil No. B318665 (Super. Ct. No. D360477) (Ventura County) |
| MARK BITTENSON,    Respondent, v. TERRI BITTENSON,    Appellant. | |

Terri Bittenson appeals from a judgment on reserved issues (judgment) pertaining to the dissolution of her marriage to respondent Mark Bittenson.  The judgment divided the parties' property and awarded spousal support to appellant.  Appellant makes numerous claims of trial court error.  We affirm.

This is the third appeal to come before us in this matter. (See *In re Marriage of Bittenson* (2019) 41 Cal.App.5th 333; *In re*

*Marriage of Bittenson* (July 28, 2020, B294136) [nonpub. opn.].)
In a separate matter, we recently affirmed the judgment
dismissing appellant's complaint against respondent and other
parties. (*Bittenson v. Bittenson et al.* (July 19, 2023, B320303)
[nonpub. opn.].)

*Factual and Procedural Background*

The parties were married in May 1987. They separated in
May 2013. A status only judgment of dissolution was entered in
December 2016. They have three children, all of whom are
adults.

In June 2021 a trial was conducted on the division of the
parties' property and spousal support. "In addition to his own
testimony, [respondent] offered testimony from three witnesses (a
vocational expert, the court-appointed receiver, and a financial
forensic expert[, Anna Leh]). [¶] . . . [Appellant] did not appear
for any portion of trial and chose not to testify." Appellant was
represented by counsel at the trial.

*Trial Court's Criticism of Appellant's Conduct*

In its judgment the trial court criticized appellant's conduct
during the litigation: "[T]the evidence at trial established that
[appellant] caused the litigation to be unnecessarily protracted,
expensive and painful. She impeded the work of the receiver and
was generally disruptive and uncooperative in terms of the sale of
the home. . . . She used and/or occupied the family home
throughout the separation, but failed to maintain it, such that
significant repairs and cleaning were required before it could be
sold. She failed to return [respondent's] separate personal
property and she failed to account for any of the personal
property belonging to the community. . . . She failed to provide
the names of witnesses or exhibit lists before trial . . . .

2

[Respondent] testified that [appellant] told him she would make these divorce proceedings a 'war of the roses' and leave him 'broke, destitute and homeless.'[1]  [¶] . . . The Court finds that [appellant] engaged in conduct during the litigation that was inappropriate, needlessly increased the expense of the litigation and caused significant hardship to [respondent] emotionally and financially."

*Appellant's Opening Brief is Defective Because She*
*Failed to Provide a Summary of Significant Facts*

The California Rules of Court, Rule 8.204(a)(2)(C) provides that each brief must "[p]rovide a summary of the significant facts limited to matters in the record."[2]  No such summary appears in appellant's opening brief.  Section IV of the opening brief is headed, "**STATEMENT OF FACTS AND PROCEDURAL HISTORY**."  But section IV merely sets forth the procedural history of the case.  The omission of a summary of the significant facts renders appellant's opening brief " 'seriously defective.' " (*William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 6, fn. 2.)

---

[1] "***The War of the Roses*** is a 1989 American satirical black comedy film . . . .  The film follows a wealthy couple with a seemingly perfect marriage.  When their marriage begins to fall apart, material possessions become the center of an outrageous and bitter divorce battle" <https://en.wikipedia.org/wiki/The_War_of_the_Roses_(film)> [as of Aug. 29, 2023], archived at <https://perma.cc/7FJY-CSJ7>.

[2] All references to rules are to the California Rules of Court.

*We Will Not Consider All Claims Made*
*By Appellant in Her Appellate Briefs*

We will consider only those claims raised in the argument section of appellant's opening brief, beginning at page 15. Furthermore, we will consider a claim only if it is clearly set forth in a heading preceding the argument concerning that claim. (See rule 8.204(a)(1)(B) [brief must "[s]tate each point under a separate heading or subheading summarizing the point"].) "The failure to head an argument as required by California Rules of Court, rule [8.204(a)(1)(B)] constitutes a waiver." (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.)

"[W]e [will] not consider all of the loose and disparate arguments [in appellant's opening brief] that are not clearly set out in a heading *and* supported by reasoned legal argument." (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294, italics added.) "The additional argument . . . in [appellant's] reply brief comes too late." (*Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, 80, fn. 7.) "[T]oo late because [respondent] did not have the opportunity to respond." (*Provost*, *supra*, at p. 1305; see *Aviel v. Ng* (2008) 161 Cal.App.4th 809, 821 ["[Appellants] attempt, in their reply brief, to develop the argument, but it is too late. We disregard issues not properly addressed in the appellant's opening brief"].)

Accordingly, we will not grant appellant's request in her opening brief for "appellate review of the pre-trial rulings of her motions to continue the trial dates" and "of the trial court's ruling concerning her attorney's [Code of Civil Procedure section] 473(b) motion and [her] motion which was filed post appeal for the

stated reasons in the subject motion under C.C.P. Section 663 and CRC 3.1590."

We will not consider the following claims in the conclusion of appellant's opening brief: (1) "This case should not have been assigned to the Family Law Accelerated Program which in effect prematurely forced the Respondent into a trial preparation mode at a time when the COVID19 pandemic was still causing major disruptions in Ventura County and through out [*sic*] the State of California." (2) "The resulting trial should not have gone forward given the serious questions which were raised concerning the Spousal Support Order from February 8, 2017." Nor will we consider claims raised for the first time in appellant's reply brief. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 799.)

*Claims that Trial Court Did Not Equally Divide the Community Estate and that Respondent Breached His Fiduciary Duty*

Family Code section 2550 provides that the court shall "divide the community estate of the parties equally."[3] Appellant contends the trial court did not equally divide the community estate. She argues respondent misappropriated community property funds and the trial court did not take his misappropriation into account when it divided the community estate. Appellant asserts: "Ms. Leh's [respondent's financial forensic expert's] opinion testimony and her ultimate calculations were not admissible because they had no legitimate basis and she instead heavily relied upon [respondent's] self-serving explanations." "[T]his court should order a post-trial accounting of the misappropriated funds due to the lack of candor on the part

---

[3] Unless otherwise stated, all statutory references are to the Family Code.

5

of [respondent] and the utter lack of an accounting from An[n]a Leh on this important issue."

Appellant also claims respondent "breached his fiduciary duties to . . . [her] by unilaterally selling community property stocks and cashing out community property Waddell & Reed funds and Bank of America 401k for his personal benefit without the written approval of the court or . . . [appellant]." (Bold and capitalization omitted.) Appellant states, "In a desperate attempt to excuse these blatant violations, [respondent] maintains that he made these post-separation transactions to pay joint expenses . . . ."

The trial court found that respondent had not misappropriated community property funds and had not breached his fiduciary duty to appellant. The court determined that the community property funds in question had been "used to pay necessary community expenses" and that appellant had not "demonstrate[d] any impairment to her interests in any community property." The court credited respondent's testimony on this issue. It found "credible and reasonable" Leh's testimony "on where the funds went."

Appellant cannot relitigate in this court "factual issues already decided against [her]" in the trial court. (*In re Dennis B.* (1976) 18 Cal.3d 687, 697.) The trial court's finding that there was no misappropriation of community property funds and no breach of fiduciary duty must be upheld if it is supported by substantial evidence. "Generally, appellate courts . . . apply the substantial evidence standard to a superior court's findings of fact. [Citations.] The substantial evidence standard [of] review has been described by our Supreme Court as follows: [¶] 'Where findings of fact are challenged on a civil appeal, we are bound by

6

the "elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court.'" (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 461-462.) "'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)

Appellant's contentions that respondent misappropriated community property funds and breached his fiduciary duty are forfeited because she failed to provide a fair summary of the facts underlying the contentions with references to the record. "A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable. [Citation.] . . . [¶] . . . Because [appellant] has failed in [her] obligations concerning the discussion and analysis of a substantial evidence issue, we deem the issue waived." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) "'An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. [Citations.] . . . The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial

7

evidence to support the judgment.'" (*Verrazono v. Gehl Co.* (2020) 50 Cal.App.5th 636, 652.)

Even if appellant had not forfeited the substantial evidence issue, respondent's and Leh's testimony would constitute substantial evidence that respondent did not misappropriate community property funds and did not breach his fiduciary duty. The trial court credited their testimony. "As a reviewing court, we have no power to revisit the credibility of witness[es] or reweigh the evidence." (*In re Maya L.* (2014) 232 Cal.App.4th 81, 104, fn. 6.) "[A]ppellate courts should give particular deference to factual findings and credibility determinations based on the trial court's personal observations of witnesses." (*People v. Garcia* (2022) 79 Cal.App.5th 1059, 1065.)

*Claim that Leh Failed to Properly Trace*
*Community and Separate Property Funds*

Appellant claims, "Ms. Leh's testimony revealed her non-compliance with the direct tracing and accounting requirements when a party has misappropriated community estate funds." The claim assumes that respondent misappropriated community funds. As discussed above, substantial evidence supports the trial court's finding that respondent did not misappropriate funds.

Appellant faults Leh for relying on respondent's characterization of property as separate or community: "[T]he only basis that An[n]a Leh could have utilized to support her analysis that a stated payment was joint or separate was [respondent's] self-serving representations." But the trial court found respondent credible, and we are bound by this finding. "As an appellate court, we cannot usurp the function of . . . the trial court, [which] finally passed upon the weight, effect, and

8

sufficiency of the evidence and the credibility of witnesses, and determine in place of [the] arbiter[] of fact the credibility of witnesses . . . ." (*Bennett v. Chanslor & Lyon Co.* (1928) 204 Cal. 101, 105.)

*Claim that Respondent Failed to Prove the Existence of an Express Agreement Required by Section 2640*

Appellant claims respondent "failed to prove the existence of an express agreement which is a prerequisite for reimbursement under Family Code [section] 2640." (Bold and capitalization omitted.) "Family Code section 2640[] provides that when community property is divided upon dissolution of the marriage, either spouse shall be reimbursed for his or her contributions of separate property to the acquisition of any property being divided as community property, *unless* the contributing spouse has waived the right of reimbursement in writing." (*In re Marriage of Heikes* (1995) 10 Cal.4th 1211, 1213, italics added.)

Appellant has misinterpreted the statute. It permits reimbursement *unless* there is a written waiver of the right to reimbursement. It does not, as appellant maintains, require "an express agreement which is a prerequisite for reimbursement." Appellant has not shown that respondent made a written waiver of his right to reimbursement.

*Claim that Respondent Failed to Establish that Appellant Had Misappropriated Community Personal Property*

In its judgment the trial court noted that respondent had presented a list of community personal property (Trial Exhibit 3) that appellant had allegedly misappropriated. Respondent valued the property at approximately $91,000. The court stated: "[Appellant] offered no evidence as to what happened to the items

9

on Trial Exhibit 3 and does not dispute that . . . the items in Trial Exhibit 3 are community property.  [Appellant] did not offer evidence of the value of these items.  However, the Court finds that the valuation provided by [respondent] is excessive given the age and use of various items.  The Court finds it appropriate to apply a 40% discount to the valuation offered by [respondent].  Therefore, the personal property on Trial Exhibit 3 is valued at $54,870.  That property is awarded to [appellant] and she must compensate [respondent] for half the value."

Appellant maintains respondent "failed to establish a credible basis for claiming that [she] had absconded with over $90,000 in [community] personal property."  But the court reduced respondent's valuation to $54,870.  Respondent's testimony and list of misappropriated personal property constitute substantial evidence in support of the trial court's finding on this issue.

*Claim Concerning Appellant's Exclusive Use*
*of Family Residence after the Parties Had Separated*

In its judgment the trial court observed, "[Respondent] presented evidence that [appellant] had exclusive use of the [community property] residence for 52 months" after the parties had separated.  The court determined the residence's rental value to be $3,000 per month.  The court ordered appellant to make an equalization payment to respondent of one-half the rental value of the residence for the 52-month period.

"'Where one spouse has the exclusive use of a community asset during the period between separation and trial, that spouse may be required to compensate the community for the reasonable value of that use.'  [Citation.]  The right to such compensation is commonly known as a '*Watts* charge.'  (See *In re Marriage of*

10

*Watts* (1985) 171 Cal.App.3d 366, 374 . . . .) Where the *Watts* rule applies, the court is 'obligated either to order reimbursement to the community or to offer an explanation for not doing so.'" (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 978.)

The trial court stated, "Leh testified that the fair rental value of the residence was $4,100 per month during the time [appellant] was living there. [Appellant] offered no evidence as to the reasonable rental value . . . ." Because of the "poor" condition of the home, the court "reduce[d] the monthly rental [value] . . . to $3,000 for 52 months."

Appellant asserts, "[N]o competent evidence was admitted pertaining to the 'rental value' of the family residence." But she fails to explain why the trial court's $3,000 per month figure is not supported by competent evidence. Appellant notes that the value of property may be shown by the opinions of "'[w]itnesses qualified to express such opinions.'" (Quoting from Evid. Code, § 813, subd. (a)(1).) Appellant does not say she objected to Leh's qualifications to express an opinion about the residence's rental value. She says the trial court "sustained" her hearsay objection when Leh "attempted to adopt a 'Zillow' estimate of the rental value."[4]

In its judgment the trial court noted that Leh's "qualifications . . . were undisputed." We reviewed the transcript of Leh's trial testimony and did not find an objection to her

_____

[4] Pursuant to Evidence Code sections 459 and 452, subdivision (h), we take judicial notice that "Zillow Group Inc is a real estate marketplace company that provides information and services related to selling, buying, renting, and financing through its platform, which is accessible through a website and mobile application" <https://en.wikipedia.org/wiki/Zillow [as of Aug. 29, 2023], archived at <https://perma.cc/9CTD-WHZM>.

qualifications.  We found only appellant's hearsay objection to the admission of an exhibit showing Zillow's estimate of the fair rental value.  The trial court overruled the objection.  It admitted the evidence not for its truth but to show the information upon which Leh had relied in arriving at her opinion as to the residence's rental value.[5]  (See Evid. Code, § 1200, subd. (a) ["'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated"].)

Appellant has not shown that, in determining the rental value of a residence, an expert cannot rely on the rental value shown on Zillow's website.  Leh testified: "My experience is that when we are talking about fair rental value, that we don't usually have a realtor come in; that the Zillow does show the market . . . rental value.  Usually if we have an appraiser come in, it has to do with the fair market value of a property, if the property is being divided between the parties, and that's not the situation here.  But with fair rental value, my experience is that the online sources are indicative of the marketplace rental value."  Leh's testimony on this matter was unrefuted.

When appellant made her hearsay objection, her counsel protested: "[T]he problem with Zillow is it doesn't take into consideration the characteristics, the condition of the home, what the condition of the home is . . . ."  Based on the poor condition of the residence, the trial court reduced Leh's estimate by 27

---

[5] The court said, "I am going to let it in but not for its truth. It is coming in under the same rationale that we have let in other hearsay documents and that is it is information upon which the witness relied and it helps the Court in understanding the witness's testimony . . . ."

12

percent – from $4,100 to $3,000.  Appellant has not carried her burden of demonstrating that the $3,000 figure is not supported by substantial evidence.  "'The trial court possesses broad discretion to determine the value of community assets as long as its determination is within the range of the evidence presented. [Citation.]  The valuation of a particular asset is a factual question for the trial court, and its determination will be upheld on appeal if supported by substantial evidence in the record. . . .'" (*In re Marriage of Iredale & Cates* (2004) 121 Cal.App.4th 321, 329.)

Appellant contends, "The trial court . . . failed to follow the stated law on the issues presented concerning [respondent's] 'Watts' claims which should have been denied in its entirety."  We reject the contention because it is not supported by meaningful legal analysis with citation to facts in the record on appeal.  (See *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457.)

*Claim that Trial Court Erroneously Refused*
*To Consider Respondent's Prior Testimony*

Appellant claims "[t]he trial court . . . erred when it refused, after the close of the evidence, to consider the prior trial testimony of [respondent]."  Appellant is referring to the reporter's transcript of an earlier proceeding conducted in July 2018, approximately three years before the June 2021 trial in the present proceeding.  Appellant makes the conclusionary assertion that respondent's prior testimony "should have been admitted . . . as the Former Testimony of a party under California Evidence Code Section 1290 and Former Testimony Offered against a Party under [Evidence Code] Section 1291."

Evidence Code section 1291, subdivision (a) provides, "Evidence of former testimony is not made inadmissible by the

13

hearsay rule if the declarant is *unavailable* as a witness."  (Italics added.)  Appellant does not explain how respondent could be deemed unavailable as a witness when he testified at the trial.  Appellant's attempt to develop this claim in her reply brief comes too late.  (See the discussion at p. 4, *ante*.)

Moreover, appellant fails to show that the alleged error resulted in a miscarriage of justice.  "[T]he appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice."  (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106; see Cal. Const., art. VI, § 13.)  "A 'miscarriage of justice' occurs when it is "'. . . reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.""  (*Lundy v. Ford Motor Co.* (2001) 87 Cal.App.4th 472, 479.)

*Appellant's Prior Testimony*

Appellant did not testify at the June 2021 trial in the present proceeding.  She argues that, based on her prior testimony at the July 2018 trial, respondent's "request for Watt's reimbursement should have been summarily denied."  But the transcript of her prior testimony was not admitted in evidence at the June 2021 trial, and appellant has failed to show that the trial court committed error in this regard.

*Disposition*

The judgment is affirmed.  Respondent shall recover from appellant his costs on appeal.

14

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____

Law Office of Jeffrey D. Johnsen and Jeffrey D. Johnsen for Appellant.

Opri & Associates and Debra A. Opri for Respondent.